# T. FRANK JONES, Appellant, v. HUBBARD et al.

### Division Two, January 31, 1906.

1. **ABSOLUTE DEED: Intended Mortgage: Necessary Allegations.** In order that a petition, the purpose of which is to have a conveyance absolute on its face declared to be a mortgage, may be held to state a cause of action, it must appear therefrom that there was a loan and that both parties so understood it at the time. The burden is upon plaintiff to show, by proper and necessary averments, that a deed absolute on its face, whether a "pretended deed" or otherwise, was a mortgage only.

2. ———: ———: **Existing Debt.** The one sure test and essential requisite of a mortgage is the continued existence of a debt from the grantor to the grantee. If there is no debt the instrument can not be a mortgage.

3. ———: ———: **Cause of Action: Simple Averment.** A mere naked averment that a deed absolute on its face was intended to be a mortgage, without any other averment, does not state a cause of action.

4. ———: ———: **Negatived By Recital: Res Adjudicata: Decree of Federal Court.** An allegation in a petition that a certain deed, absolute on its face, was intended to be and was in fact a mortgage, is negatived by a further recital therein that by a decree of the Federal circuit court it was adjudged that the grantors by their deed conveyed to the grantee the entire fee-simple title free from any claim of the grantors. and that a concurrent agreement to reconvey was not a mortgage, but a mere option. That decree obtained in a court having jurisdiction of the parties and subject-matter was conclusive between the parties thereto and their privies, and could not and can not be gone behind for the purpose of showing a state of facts which might have been a defense to the action in which that judgment was rendered.

5. ———: ———: ———: ———: **Privies.** A judgment creditor of the grantor in such conveyance, who purchases his interest at execution sale, after such judgment was rendered in the Federal court, is a privy with the grantor, although the purpose of the conveyance may have been to deceive and to cover up the real transaction between the grantor and grantee.

6. **Res Adjudicata: Federal Court: Judgment By Consent.** A judgment by consent of a United States circuit court, having jurisdiction of the parties and subject-matter, is binding on all parties thereto and their privies, and can not be attacked in a collateral proceeding.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1) The transactions alleged to have occurred between Thomas H. Mastin and Julia Mastin and respondents in May, 1893, constituted under the circumstances alleged an equitable mortgage to respondents upon the real estate described in the petition. 1 Jones on Mortgages (3 Ed.), sec. 248; Wilson v. Drumrite, 21 Mo. 325; Tibeau v. Tibeau, 22 Mo. 77; Cobb v. Day, 106 Mo. 278; Book v. Beasly, 138 Mo. 455; McDonald v. Hoover, 142 Mo. 495; Bogk v. Gassert, 149 U. S. 17; Garvin's Admx., v. Vincent, 87 S. W. 804; Gillis v. Martin, 17 N. C. 470. (2) Appellant can question the validity of the transactions between respondents and Thomas H. Mastin, and has the right to redeem. R. S. 1899, sec. 3398; Woodson v. Carson, 135 Mo. 532; Huffman v. Nixon, 152 Mo. 303; Reynolds v. Faust, 179 Mo. 28. (3) (a) The judgment was collusive, and the parties who participated in the collusion can be deprived of the benefits of it, notwithstanding, it was in a Federal Court. Wonderly v. Lafayette Co., 150 Mo. 652; Marshall v. Holmes, 141 U. S. 589. (b) A fraudulent or collusive judgment can be set aside by a creditor of the defendant, and testimony outside the record is admissible to show the fraud or collusion. Black on Judgments, sec. 293; Mitchell v. Kintzer, 5 Pa. St. 216; Vose v. Morton, 4 Cush. 27; Callahan v. Griswold, 9 Mo. 792; Smith v. Cuyler, 78 Ga. 654. (4) The decree of the United States Circuit Court and the repeated conveyances made in pursuance thereof to respondents were collusive, fraudulent and void as to appellant. Snell v. Harrison, 104 Mo. 188; Bank v. Buck, 123 Mo. 154; State v. O'Neill, 151 Mo. 84; Bank v. Gailey, 177 Mo. 203. (5)

All doubts in reference to the nature of the transaction should be resolved in favor of the proposition that it is a mortgage. 1 Jones on Mortgages (3 Ed.), sec. 279. Appellant is proposing to do equity, and should be permitted to prove the facts alleged in his petition. Respondents will get their pound of flesh, when he is permitted to redeem.

*Pratt, Dana & Black* for respondents.

(1) There was no averment of the existence of a debt, which is an essential to a mortgage. 1 Jones on Mortgages (6 Ed.), sec. 260; Bobb v. Wolff, 148 Mo. 344; Bailey v. Trust Co., 87 S. W. 1005; Wallace v. Johnston, 129 U. S. 58; New Orleans Ass'n v. Adams, 109 U. S. 211; Carroll v. Tomlinson, 192 Ill. 398. There being no averment of a debt, there was no averment that any obligation secured by the alleged mortgage, was payable, which was essential to the exercise of the right plaintiff claims, if it existed. Gancert v. Henry, 98 Cal. 281. (2) Even if the original transaction had constituted a mortgage and the petition had contained sufficient averments with regard thereto, still, this appellant, under the other allegations of the petition, was not entitled to redeem. Plaintiff claimed the right to redeem as a purchaser at an execution sale of T. F. Mastin's interest in certain property. He stood in privity of claim and estate with Mastin and had no other or different rights from the latter. He acquired by the sheriff's deed only such interest as the execution debtor had in the land at the time the judgment was rendered on which the execution was issued. Mann v. Best, 62 Mo. 491; White v. Davis, 50 Mo. 334; Throckmartin v. Pence, 121 Mo. 50; 17 Am. and Eng. Ency. Law (2 Ed.), p. 1010. The averments of the petition show that Mastin's interest in the land had been conveyed by him and adjudicated out of him by a decree of the United States Circuit Court before the plaintiff even

claims to have become Mastin's creditor. Mastin had not, at the time of the judgment against him, any right to redeem, nor had he ever such right. (3) The averments of fact in the petition with reference to the two instruments of May, 1893, claimed to have been a mortgage, shows that they were not a mortgage so far as Mastin was concerned and he could never have maintained such claim. There were no averments of fact, though there were of petitioner's conclusions, indicating that they had any characteristics of a mortgage or were ever thought of as a mortgage. (4) Even if Mastin had a mortgagor's interest in the property after the instruments of 1893 were delivered, he parted with it by his deed of 1894 to Ward, receiver, and in 1895 by joining with said receiver in a deed of the property to Hubbard and Morse, in conformity with a degree of the Federal court which appointed the receiver. 11 Am. and Eng. Ency. Law (2 Ed.), 392; Hazenritter v. Kirchhoffer, 79 Mo. 242; Thistle v. Buford, 50 Mo. 281; Roan v. Wynn, 93 Mo. 511. (5) Any possible claim of Mastin's or of anyone in privity with him, or of any of his creditors, of a right to redeem was settled adversely, as appears from the positive averments of the petition, by the decree of the United States Circuit Court of June 13, 1895. The petition shows that the court had jurisdiction of the parties and the subject-matter, does not aver any fraud or deceit with reference to obtaining or entering it, but plainly shows a judgment entered in the case, of which, as well as of the parties thereto, a court of general authority had jurisdiction, by which decree the instruments of 1893 were adjudicated not to constitute a mortgage, but a mere option in favor of Mastin to purchase, and the title to the land therein was decreed to be vested in fee simple in Hubbard and Morse, free from any claim of the Mastins or their receiver. It is well settled that such a judgment cannot be attacked at all in any other court if the court rendering it had jurisdiction of the parties; that it cannot be attacked

collaterally as attempted here in any court under any circumstances. 11 Am. and Eng. Ency. Law (2 Ed.), 388; Foote v. Clark, 102 Mo. 394; Crispen v. Hannavan, 50 Mo. 418; State ex rel. v. St. Louis, 145 Mo. 567; Yeoman v. Younger, 83 Mo. 424; Johnson v. Realty Co., 167 Mo. 339; Reed v. Vaughn, 15 Mo. 141; State ex rel. v. Rainey, 74 Mo. 233; 1 Black on Judgments, secs. 285, 245, 246, 251, 252; 2 Id., secs. 517, 518, 705, 729; Short v. Taylor, 137 Mo. 518; Morrill v. Morrill, 20 Ore. 96.

*Johnson & Lucas* for appellant in reply.

(1) If the conduct of Mastin and respondents had not been a fraud upon the rights of appellant and his assignor, then appellant might be considered in privity with Mastin, having purchased at execution sale, but appellant acquired at that sale the real interest of Mastin, as distinguished from that which was made to appear by the fraudulent acts of Mastin and respondents. (2) A recovery by appellant does not necessarily involve the setting aside of the judgments, decrees and orders of the United States Circuit Court set out in this petition, but will deprive the respondents as beneficiaries of the unconscionable advantage sought to be obtained thereby.

GANTT, J.—This suit was commenced in the circuit court of Jackson county, April 4, 1902, by filing the following petition:

"Plaintiff says that on the 1st day of August, 1891, one Thomas H. Mastin was indebted to one Susan N. Jones in the sum of $6,500, as evidenced by a written agreement between them of that date, and on the 1st day of August, 1897, a settlement was had between them by which there was found due the said Susan N. Jones the sum of $7,500, for which sum the said Thomas H. Mastin executed and delivered to her his negotiable promissory note due three years from that date and bearing

interest from date at the rate of six per cent per annum; that afterwards, for value received, the said Susan N. Jones sold, indorsed, assigned and delivered the said note to the plaintiff herein, and on the 16th day of June, 1900, plaintiff herein filed a suit on said note in the circuit court of Jackson county, Missouri, by attachment against the said Thomas H. Mastin, and on that date the writ of attachment was levied on the following (along with other) real estate in Kansas City, Jackson county, Missouri, to-wit:

"Lots seventeen to twenty-seven, inclusive, block one; lots one to nineteen, inclusive, and lots thirty-four and thirty-five, block two; lots one to eight, inclusive, and lots twelve and thirteen, block three; lots ten to twenty-two, inclusive, block four; lots one to eighteen, inclusive, and the north ten feet of lot nineteen, and lots twenty to thirty-two, inclusive, in block twenty-five; lots one and two, lots five to fourteen, inclusive, the north half of lot twenty-three and lot twenty-four, block thirty-two; the north thirty-eight and forty-hundredths feet of lot fourteen, and lots fifteen to twenty-four, inclusive, block thirty-three; lots one to nine, inclusive, and lots eleven and twelve, block thirty-four; all in Hyde Park, according to the plat thereof on file and of record in the recorder's office of said Jackson county. Also lots one to twenty-four, inclusive, and lots thirty-eight to forty-nine, inclusive; all in Park Place, an addition to the City of Kansas (now Kansas City), as shown by the plat thereof on file and of record in the recorder's office of said Jackson county.

"That on the 9th day of April, 1901, a judgment was given by the circuit court of Jackson county, in the suit so instituted, for the sum of $7,900 in favor of the plaintiff and against the said Thomas H. Mastin, and on the 16th day of May, an execution issued from the clerk's office of said circuit court upon the said judgment, by virtue of which the sheriff of Jackson county levied upon all the right, title, interest and es-

tate of said Thomas H. Mastin of, in and to the above described (along with other) real estate, and upon the 10th day of July, under the said judgment and execution, the said sheriff of Jackson county, at public sale held and conducted in accordance with the law, sold all the right title, interest and estate of the said Thomas H. Mastin of, in and to the above described (along with other) real estate to the plaintiff herein for the sum of $500, and executed and delivered to the plaintiff a deed therefor, which said deed was on the 13th day of July, 1901, filed for record in the office of the recorder of deeds of Jackson county.

Plaintiff further says that in the month of May, 1893, the said Thomas H. Mastin, jointly with Julia Mastin, executed and delivered to the defendants Hubbard and Morse a pretended deed, purporting to convey to them, for the consideration of $225,000, the above described (along with other) real estate, the said Thomas H. Mastin being the owner in fee simple of an undivided half-interest in said real estate, and on the same date the said Hubbard and Morse on one part, and the said Thomas H. Mastin and Julia Mastin on the other part, entered into a pretended agreement in writing which recites that the said Hubbard and Morse, being the owners of the property described in the said deed, gave to the said Thomas H. Mastin and Julia Mastin an option to buy said property within three years upon the payment of $225,000 with interest, and of an additional sum amounting to ten per cent upon that part of the payment made before one year from date, eighteen per cent upon that part of the payment made after one year and before two years from date, and twenty-five per cent on that part of the payment made after two years and before three years from date; that the said deed and agreement were executed at the same time and were parts of the same transaction (although for the purpose of deception, the deed was dated May 15, 1893, and the agreement May 16, 1893, and the

deed was recorded at once, while the agreement was withheld from record for more than a year) and were intended by the parties to be, and in fact and in law were nothing more than a secret and disguised mortgage to secure the payment of certain sums of money furnished by the said Hubbard and Morse to the said Thomas H. Mastin and Julia Mastin; that the said deed was not intended, or understood to be, and was not, in fact or in law, an absolute or unconditional conveyance of said property; that the recital in said agreement that the said Hubbard and Morse were owners of the real estate was false and known by all the parties to be false and the pretended option given by them to the said Thomas H. Mastin and Julia Mastin to buy said property was a fiction devised for the purpose of carrying out the terms of the secret mortgage; that the whole scheme of the deed and agreement thus concealing and covering up the true state of the title and the real facts of the transaction, was cunningly devised by the said Hubbard and Morse to enable them to exact and receive unlawful and usurious interest upon the money furnished by them to the said Thomas H. Mastin and Julia Mastin, and to evade and defeat the usury laws of this State for such cases made and provided; that the pretended option to sell provided for the repayment to them not only the money loaned, with interest and all other proper charges, but an additional sum of ten per cent, eighteen per cent, or twenty-five per cent upon such amount (being from $25,000 to $50,000) according to the time of payment, and this additional sum or bonus was an unlawful and usurious charge and would have appeared as such if the true nature of the transaction between the parties had been shown in the form of an ordinary mortgage or deed of trust.

"Plaintiff further says that in the year 1894 the said Julia Mastin filed a bill of complaint in the United States Circuit Court for the Western Division of the Western District of Missouri, against the said Thomas

H. Mastin, alleging among other things their joint ownership of the real estate hereinbefore described (although they had previously executed said pretended conveyance thereof to the said Hubbard and Morse) and asking among other things for an accounting and dissolution of the partnership existing between them, and that in pursuance of an order of the said court to that effect the said Thomas H. Mastin and Julia Mastin, by their deed dated ———— day of ——————, 1894, conveyed the said real estate to Hugh C. Ward, receiver, appointed such by the said court in that suit; that afterwards, upon the intervening petition of the said Hubbard and Morse filed in the last mentioned suit, and by agreement between them and the said Thomas H. Mastin, Julia Mastin and Hugh C. Ward, receiver, and without examination or intervention by the court, a decree was entered on June 13, 1895, defining their respective interests in the said real estate, and that the decree thus entered by agreement of the said parties, recites, first, that the agreement of May 16, 1893, above referred to, was not a mortgage but a mere option for the purchase of the property; second, that the entire fee-simple title to the property described is vested in the said Hubbard and Morse free from any claim of the said Thomas H. Mastin or Hugh C. Ward, receiver; and, third, that the said Hugh C. Ward, receiver, his successors or assigns, shall have the option to buy the said property from the said Hubbard and Morse by paying therefor $303,417 with five per cent interest thereon, upon certain conditions and terms therein set out; and ordered said Thomas H. Mastin and Julia Mastin to make another deed of conveyance to said Hubbard and Morse, which was accordingly done.

"Plaintiff further says that the state of title and the relations between the parties remained the same under this deed and decree as under the former deed and agreement except in the following particulars: first, the interest on the indebtedness was reduced from

six per cent to five per cent; second, no provision was made for the continuance, after the date of the decree, of the unlawful and usurious interest or bonus consisting of a certain per cent (in addition to lawful interest and other proper charges) upon the amount paid, provided for in the first agreement; and, third, the principal amount of the indebtedness was increased by the addition of $54,871.90, being the amount of the unlawful or usurious interest or bonus provided for in the first agreement and computed up to the date of the decree, which sum, as part of the principal indebtedness of $303,417, it was agreed must be paid with interest by the said Hugh C. Ward, receiver, Thomas H. Mastin and Julia Mastin before they were entitled to a conveyance from the said Hubbard and Morse.

"Plaintiff further says that under the provisions of this decree said Hugh C. Ward, receiver, paid to said Hubbard and Morse, at different times between the date of said decree and October 10, 1899, a very large sum in the aggregate, to be applied to the existing indebtedness, but the exact amount thereof plaintiff is not able to state; that about the last-mentioned date the said United States Circuit Court entered a final decree in the said suit between Thomas H. Mastin and Julia Mastin, and thereupon ordered said Hugh C. Ward, receiver, to convey the above described (along with other) real estate, to the said Thomas H. Mastin and Julia Mastin subject to all legal, valid and subsisting incumbrances thereon (although by the terms of the decree of the same court entered by agreement as aforesaid the entire fee-simple title to said real estate was vested in the said Hubbard and Morse, free from any claim, right or interest in said Thomas H. Mastin, Julia Mastin, or Hugh C. Ward, receiver, and in addition thereto, the said Hugh C. Ward, receiver, as well as the said Thomas H. Mastin and Julia Mastin had been required to and by their joint deed had conveyed, all their interest in said real estate to the said Hubbard and Morse), and in compliance

with such order the said Hugh C. Ward, receiver, by his deed dated February 5, 1900, did convey the above described (along with other) real estate to the said Julia Mastin and Thomas H. Mastin, jointly, thereby vesting in said Thomas H. Mastin an undivided half-interest in said real estate subject to all legal, valid and subsisting incumbrances.

"Plaintiff further says that the said Thomas H. Mastin, before and during the period of time covered by the various transactions and dealings hereinbefore set out between him and the said Hubbard and Morse, was indebted to plaintiff's assignor, the said Susan N. Jones, in the manner and to the amount set out in the first clause of this petition; and that, being so indebted, the said Thomas H. Mastin, in law and good conscience, had no right to convey the title of real estate belonging to him, without consideration, to the said Hubbard and Morse, or any other persons, and had no right to put any incumbrances or lien thereon in favor of said Hubbard and Morse, or any other persons, except for, and to the extent of, an actual, valid and legal consideration therefor; and that the plaintiff, as the assignee of the indebtedness of the said Susan N. Jones, is not bound nor in any way affected by the pretended, fictitious and collusive conveyances, agreements or decrees devised for the purpose of concealing the true state of the title and the real facts of the transactions between the said Thomas H. Mastin and the said Hubbard and Morse, but all the said pretended, fictitious and collusive conveyances, agreements and decrees were and are fraudulent and void as to the plaintiff, and that the plaintiff's rights as the holder of such indebtedness could, and can, only be affected by the dealings between said parties in so far as they were actual and bona fide and supported by an actual and legal consideration, and that the plaintiff is only concerned in this action with the true facts and real nature of the dealings and transactions of the said parties, and not with the false and

fraudulent appearance and character which they sought to give them for the purpose of deceit and fraud; and that for the purpose of this suit, and in so far as plaintiff's rights are affected, the deed of May 15, 1893, and the agreement of May 16, 1893, hereinbefore set out, were merely a mortgage to secure the repayment of certain sums of money furnished by said Hubbard and Morse to Thos. H. Mastin and Julia Mastin with legal interest thereon, and that the decree of the United States Circuit Court, entered by agreement of the said parties on June 13, 1895, as hereinbefore set out, was merely a renewal and extension of said mortgage with certain modifications as to terms; that plaintiff is unable to state the exact amount of money furnished said Thomas H. Mastin and Julia Mastin by the said Hubmard and Morse, nor the exact amount of the repayments thereof made by the said Thomas H. Mastin, Julia Mastin and Hugh C. Ward, receiver, but alleges and charges the fact to be that, after the deduction of the unlawful and usurious charges provided for in the agreement on May 16, 1893, the remaining legal indebtedness for which defendants have a just lien upon said real estate has been largely, if not wholly, paid off and discharged; and that by reason of the sheriff's deed conveying to plaintiff all the right, title, interest and claim of said Thomas H. Mastin in and to said real estate as set out in the first clause of the petition, plaintiff is the equitable owner of an undivided half-interest in and to said real estate, subject to the claim and lien of the defendants for the repayment of the balance, if any, of such legal indebtedness.

"Wherefore, in consideration of the premises, plaintiff prays the court to find and decree that as against the plaintiff the said deed of May 15, 1893, and agreement of May 16, 1893, and decree of the United States Circuit Court of June 13, 1895, as hereinbefore fully set out, merely constitute a mortgage to secure the repayment of certain sums of money furnished by de-

fendants Hubbard and Morse to the said Thomas H. Mastin and Julia Mastin, and that said mortgage has not been foreclosed and is still subsisting, and that an accounting shall be had between the plaintiff and defendants to determine the amount of the sums so furnished and of any other legal indebtedness, if any, to secure the repayment of which the said deed was made and the said decree was entered, and also to determine the amounts and dates of the various payments made thereon by the said Thomas H. Mastin, Julia Mastin and Hugh C. Ward, receiver, and to determine and state the balance, if any, of the legal indebtedness now remaining, after all proper credits have been made, which is a just lien upon the said real estate, and that the plaintiff may be permitted to redeem the undivided one-half interest of said real estate from said lien upon the payment of one-half the amount of such balance, if any, remaining unpaid, and that the defendants be required upon such payment by proper instruments of record to release the undivided one-half interest of said real estate from the lien of the various deeds, agreements and decrees hereinbefore set out, and that the plaintiff shall have such other and further relief as to the court may seem meet and proper under the circumstances of the case.''

The defendants interposed the following demurrer:

''Come now Charles J. Hubbard and Charles F. Morse, the defendants above named, and demur to the petition of the plaintiff filed herein, and for ground for such demurrer state:

''1. The plaintiff has not legal capacity to sue in the manner and form set forth in his petition.

''2. Said petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against these defendants.

''Wherefore, defendants ask for judgment herein in their favor and for costs.''

Saturday, March 14, 1903, the court rendered the following judgment:

"The demurrer of defendants to the petition of the plaintiff in this cause having been heretofore sustained, to-wit, on February 21, 1903, and during the present term of this court, and plaintiff having failed and refused to amend said petition and to plead further, it is adjudged by the court that the plaintiff take nothing by his writ in this cause and that defendants go hence without day and recover of the plaintiff their costs in this behalf expended and have thereof execution."

Thereupon plaintiff in due form appealed to this court.

I. Conceding the truth of every fact well pleaded, does the foregoing petition state a cause of action?

Stripped of the technical adornment in which they are clothed, the following facts stand confessed by the demurrer: Thomas H. Mastin on the first day of August, 1891, was indebted to Susan N. Jones to the amount of $6,500. On May 15, 1893, Thomas H. Mastin and Julia Mastin conveyed by deed the real estate described in the petition to the defendants, Hubbard and Morse, for the sum of $225,000, and said deed was promptly recorded. On the same day Hubbard and Morse gave Thomas H. Mastin and Julia Mastin an option for three years to purchase said real estate by paying $225,000 therefor, and if they availed themselves of said option in one year to pay an additional sum, amounting to ten per cent on said sum; if in two years, an additional sum, amounting to eighteen per cent on said amount; and if they availed themselves of said option after two years and within three years, an additional sum of twenty-five per cent on said amount. Afterwards in 1894, a suit was brought in the United States Circuit Court for the Western District of Missouri by Julia Mastin against Thomas H. Mastin to dissolve an alleged partnership between said Julia and Thomas Mastin, in which Julia Mastin alleged a joint

ownership of the real estate conveyed as above stated by said Julia and Thomas Mastin to Hubbard and Morse, and in said suit, Hugh C. Ward was appointed receiver, and by order of said court, the said Julia and Thomas Mastin conveyed said real estate to said receiver. Thereupon Hubbard and Morse intervened in said suit in the Federal court, and upon a hearing of said intervening petition, it was adjudged and decreed on June 13, 1895, that the option agreement of May 16, 1893, ''was not a mortgage, but was a mere option for the purchase of said property,'' and that ''the entire fee simple thereto was vested in Hubbard and Morse free from any claims of the said Mastins, or said receiver,'' and that the ''receiver, his successors or assigns should have the option to buy said property from said Hubbard and Morse on certain terms and conditions therein set out,'' and further ''ordered said Mastins and said receiver to make a deed of said property to Hubbard and Morse [the defendants herein], which was done.''

It further appears that on August 1, 1897, Thomas H. Mastin executed his note to Susan N. Jones for $7,500, in settlement of his indebtedness to her, payable three years after date, and afterwards Susan N. Jones assigned said note to plaintiff T. A. Frank Jones, and thereafter plaintiff brought suit on said note and recovered judgment against Thomas Mastin in the circuit court of Jackson county, on April 9, 1901, and execution issued thereon, and at a sheriff's sale thereunder plaintiff became the purchaser of all the interest of Thomas H. Mastin in said real estate for $500, and received a deed therefor. It also appears that after the decree in the United States Circuit Court, the receiver, Ward, under the provisions of said decree, paid Hubbard and Morse a large sum in the aggregate, the amount whereof plaintiff was not able to state. Afterwards a final decree was entered in the United States Circuit Court, and Ward, the receiver, was ordered to reconvey the

above-described real estate to Julia and Thomas Mastin subject to all valid, legal and subsisting incumbrances thereon, and said receiver on February 5, 1900, did so convey said real estate.

In view of the foregoing facts, plaintiff insists that the result was that defendants Hubbard and Morse merely have a mortgage on said real estate, and plaintiff, as the purchaser of Thomas H. Mastin's interest, has become the owner of an undivided one-half interest in and to said real estate, subject to defendants' claim to repayment of the alleged mortgage debt—and he prays that the deed of May 15, 1893, from Julia and Thomas H. Mastin to Hubbard and Morse and the decree of the United States Circuit Court be decreed to constitute a mortgage to secure the payment of certain sums of money furnished by defendants to Thomas H. Mastin and Julia Mastin, and that said mortgage has not been foreclosed, and for an accounting of the amounts paid by said Mastins and Ward, as receiver, and to allow plaintiff to redeem the undivided one-half interest of Thomas H. Mastin from the lien of said mortgage. It is perfectly apparent that if plaintiff had any standing whatever in a court of equity it is as the purchaser by sheriff's deed of any interest Thomas H. Mastin had in said real estate.

He acquired only such interest as Thomas H. Mastin had in the lands at the date of the judgment on which the execution was based. [Mann v. Best, 62 Mo. 491.]

The effect of our recording acts upon the above statement of the law is not involved in the facts in this case. The substratum of the whole petition is that the deed from Julia Mastin and Thomas H. Mastin to defendants Hubbard and Morse of May 15, 1893, and the decree of the circuit court of the United States for the Western District of Missouri, constitute only a mortgage.

No one at this day will question that a deed, absolute on its face, may on a proper showing be decreed

to be merely a mortgage, but when a pleader, as in this case, avers facts which show an absolute conveyance, if he insists it was a mere mortgage the obligation rests upon him to allege the additional facts which it is necessary to prove to show that the deed was in truth only intended as a mortgage.

Facts which are necessary to be shown to convert a deed absolute into a mortgage must be alleged in order to be proven. Among these essential averments, it should appear there was a loan and that both parties so understood it at the time of the execution of the deed. It is not sufficient that one of the parties to an instrument of conveyance, absolute in its terms, intended it only as a mortgage. Nowhere in this bill is there any allegation that Julia and Thomas H. Mastin had borrowed $225,000 of Hubbard and Morse or any other sum, and the same was still a subsisting debt. The nearest approach to such an averment is the statement that "the deed and the option were intended by the parties to be and in fact and in law were nothing more than a secret and disguised mortgage to secure the payment of certain sums of money furnished by the said Hubbard and Morse."

But prior to this it was alleged that in May, 1893, Thomas H. Mastin and Julia Mastin jointly executed and delivered to defendants Hubbard and Morse, a pretended deed of conveyance purporting to convey to them for $225,000 the said real estate. It is true, counsel denominated this "a pretended deed," but a pretended deed is a deed apparently or prima facie valid, and having pleaded the execution and the delivery of such a deed, the burden was on plaintiff by proper and necessary averments, to show that it was a mortgage only. [Bowman v. Ash, 143 Ill. 1. c. 667.]

None of the usual concomitants of a mortgage, to-wit, a loan; an obligation on the part of the grantee to pay; a promise to allow the grantee to redeem; the disproportionate value of the land to the consideration

named in the deed, appear in the petition. Again and again it has been ruled that the one sure test and essential requisite of a mortgage has ever been the continued existence of a debt from the grantor to the grantee in the deed. If there is no debt the instrument cannot be a mortgage, whatever else it may be. [Bobb v. Wolff, 148 Mo. 344.]

In Bailey v. St. Louis Union Trust Company, 188 Mo. l. c. 492, it was pertinently said: "If this absolute deed is a mortgage it is not so because of anything contained in it or in the agreement, but because of something outside of both by which the natural force and effect of these instruments must be controlled and varied. There is but one thing that can be shown under all the authorities that could have that effect, and that is that the deed, though absolute in form, was in fact given as a mere security."

The petition does not allege that the Mastins owed Hubbard and Morse on or by virtue of the above mentioned deed and agreement, or that Hubbard and Morse had any recourse by reason of those instruments against the Mastins, or that said debt was due and payable. It cannot be that, when an absolute conveyance is shown, the grantor may by a naked averment that it was intended merely as a mortgage, without any other averment, require the grantee to answer. There is not in this case even the pretense that there was a verbal agreement to hold said deed as a mortgage or security only. There is no allegation that Hubbard and Morse loaned the Mastins any sum, nor the date when such sum was to be repaid, nor that the Mastins agreed to pay any specific sum at any time on any account whatever, nor that they conveyed the property as security for such sum.

But independently of the foregoing considerations, the bill on its face negatives the claim that the Mastins or Hubbard and Morse intended the deed and option contract should be a mortgage, because it distinctly

avers that by a decree of the United States Circuit
Court for the Western District of Missouri, it was ad-
judged and decreed that the Mastins by their deed con-
veyed to Hubbard and Morse the entire fee simple in
said real estate free from any claim of said Mastins or
Hugh C. Ward, receiver, and that the agreement to re-
convey *was not* a mortgage but a mere option. What
effect, then, is to be ascribed to the averment that this
decree of a court of competent jurisdiction did not in
any manner affect the relation of these parties and
that they remained the same after the entry of the de-
cree as before?

If true, it will prove a very effective and simple de-
vice for setting aside decrees rendered by courts having
jurisdiction both of the subject-matter and the parties.
Heretofore it has been the settled law of this State that
a judgment obtained in a court having jurisdiction of
the parties and the subject-matter in controversy was
conclusive between the parties thereto and their privies,
and could not be gone behind for the purpose of show-
ing a state of facts which might have been a defence to
the action in which such judgment was rendered. [John-
son v. Realty Co., 167 Mo. 1. c. 339 et seq.]

That the plaintiff is a privy in estate with Thomas
H. Mastin, to whose interest, if any, he succeeded by his
sheriff's deed, is not open to discussion. [Foote v.
Clark, 102 Mo. 394; Greenleaf, Ev., sec. 189; Henry v.
Woods, 77 Mo. 280; State ex rel. v. St. Louis, 145 Mo.
567.]

In Reed v. Vaughan, 15 Mo. 141, Judge Scott,
speaking for this court, said: "The courts of the Unit-
ed States, though possessing limited. juridiction, yet, in
the intendment of law, stand upon the same footing as
courts of record of general jurisdiction. All the pre-
sumptions which are indulged in favor of superior tri-
bunals of general jurisdiction are equally extended to
the courts of the United States. In pleading a judgment
or decree of one of those courts, there is no more neces-

sity for showing the facts which confer jurisdiction than in a plea of judgment of the highest tribunal known to the law.'' [State ex rel. v. Rainey, 74 Mo. 233.]

Something is said about this decree having been by consent, but this does not in the least affect its binding force. [Short v. Taylor, 137 Mo. 517.]

Indeed, it is not to be wondered at that when Hubbard and Morse discovered that Mrs. Mastin had included their property in her suit against Thomas H. Mastin, they promptly intervened to rid their property of the cloud thus attempted to be placed upon it and that when Mrs. Julia Mastin and Thomas H. Mastin and the receiver, Hugh C. Ward, were confronted with the absolute deed and the option contract, they recognized that they had nothing but an option and that the court with their consent so adjudged. No other conclusion could have been reached in the premises. That judgment cannot be assailed in this collateral way. The plaintiff, standing in the shoes of Thomas H. Mastin, cannot ask this court to disregard the decree of the United States Circuit Court, and nullify it by construing it to mean the opposite of what the court explicitly decided.

We might extend this opinion to much greater length in showing that there was no mortgage and nothing from which to redeem, and that whatever the facts, both the Mastins and the receiver and Hubbard and Morse were precluded by the decree of the United States Circuit Court from alleging that the deed from Julia Mastin and Thomas H. Mastin to Hubbard and Morse to the lands in suit was a mortgage, or that the contemporary agreement was anything more than a mere option to purchase long since expired, and that plaintiff being a privy in estate with Thomas H. Mastin, was equally bound by that decree, and that he acquired no title to the lands in suit by his sheriff's deed of Thomas H. Mastin's interest; but we have said enough to indi-

cate the grounds of our opinion that the demurrer was properly sustained, and the judgment of the circuit court is therefore affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.