# JOSEPH P. DUELL et al., Appellants, v. G. E. LESLIE et al.

### Division Two, December 10, 1907.

1. **MORGAGE: Deed Absolute on Face: Redemption.** A deed absolute on its face may be shown to be a mortgage, and courts in the exercise of their equity powers may declare it to be a mortgage and permit the grantor to redeem.

2. ——: ——: **When? Debtor and Creditor.** A conveyance absolute on its face will not be held to be a mortgage unless the relation of debtor and creditor existed between the grantor and grantee. It is essential that the facts show the existence of a debt due from the grantor to the grantee, and that it was their intention in the execution of the deed to secure the payment of that debt, or at least the facts should be of such a nature and character as to authorize a legitimate inference that such was the intention of both parties.

3. ——: ——: **This Case.** Plaintiff's land had been sold under a deed of trust to the mortgagee, and plaintiff and defendants as sureties entered into bond to redeem the land, and plaintiff by warranty deed conveyed it to defendants and at the same time entered into a written agreement by which defendants were within the year to furnish the money necessary to redeem the land and to pay taxes, and any of the parties might sell it at not less than a stated price, and plaintiff was to have possession until the next March and pay rent until then, and if the land was sold the money expended in redeeming it and all other expenses were to be paid and the surplus divided equally between plaintiff and defendants, but "should either party fail to find a purchaser before March 1st, then this contract to be at an end and said land to be considered as deeded absolutely" to defendants and plaintiff "to give possession without further notice on March 1st." The bond to redeem was not accepted by the purchasing mortgagee, and thereupon one of the defendants paid off the amount due under the deed of trust, and took up said note and deed of trust, and the other defendant by quit-claim deed released to him. The land was not sold, and on March 1st plaintiff yielded possession to said defendant. *Held*, that the facts do not establish a relation of debtor and creditor between plaintiff and defendant, nor are they of such a nature as to authorize a legitimate inference that the warranty deed was intended by the parties to be a mortgage.

4.   ———: ———: **Conditional Sale.** A conveyance of land, burdened and qualified with a condition that either of the parties within a given time may sell the land at not less than a named price, the balance, after lifting an existing encumbrance and paying expenses with the money acquired by the sale, to be divided among the parties, is a sale, and not a mortgage.

5.   ———: ———: **Security.** The ultimate fact which converts an absolute deed into an equitable mortgage is that it was given as a security.

Appeal from Scotland Circuit Court.—*Hon. Charles D. Stewart*, Judge.

AFFIRMED.

*Smoot & Smoot* for appellants.

*J. M. Jayne, N. M. Pettingill* and *Silver & Brown* for respondents.

FOX, P. J.—This is a proceeding in equity which was begun by the plaintiffs in the Scotland Circuit Court on July 5, 1900, by which it is sought to have an accounting taken, and ascertain the amount due on a certain mortgage of record, and authorizing the plaintiff to redeem the land embraced in the mortgage, from an encumbrance, by paying the balance due, and for the further relief of reforming a contract made between the parties, and that the warranty deed as executed by the plaintiffs be declared a mortgage, and for other general relief.

We deem it unnecessary to reproduce the pleadings in this cause, but it is sufficient to state that the main issue presented is as to whether or not the warranty deed as executed by the plaintiffs to N. V. Leslie and F. M. Cowell was in fact executed simply as a security for debt and amounted to nothing more than an equitable mortgage. The cause was submitted to the trial court upon an agreed statement of facts and such statement fully indicates the issues presented

in the pleadings. Such agreed statement of facts was as follows:

"For the purpose of a decision of the rights of the parties to the above-entitled cause upon all issues except the issue of the value of the rents and profits and the issue of the value of the improvements put upon the lands in question, the parties, plaintiffs and defendants, submit said cause upon the following agreed statement of facts:

"The value of the rents and profits and the improvements may be determined by further stipulation or by evidence taken by the court, each party to the cause reserving the right to appeal from the decision that may be rendered in the cause.

"It is agreed that on December 22, 1892, plaintiff, Joseph P. Duell, was the owner of the north three-fourths of the east fourth of section sixteen and the northeast fourth of the northwest quarter of section twenty-two, all in township sixty-four, range eleven west, in Scotland county, Missouri, and occupied the same with his family; and on said date borrowed of Eli Seeley, twenty-five hundred dollars, bearing seven per cent compound annual interest from date, to secure which he and his wife on said day executed their deed of trust upon all said lands to one William B. Seeley, trustee, the said Eli Seeley, being the beneficiary therein, which deed of trust was in the usual form and is recorded in Deed Record 21 at page 245 of the deed records of Scotland county, Missouri; that on the 4th day of March, 1896, no interest had been paid on said deed of trust and the principal with the accrued interest amounted to over thirty-one hundred dollars and that on said 4th day of March all the said land having been duly advertised was sold by said trustee, the forty acres in section twenty-two being bid off by Lackey at eleven hundred dollars and the land in suit being struck off to Eli Seeley, the beneficiary; that on

the 6th day of March, 1896, Joseph P. Duell, with
N. V. Leslie and F. M. Cowell as his sureties, executed
to Eli Seeley their bond to redeem the one hundred
and twenty acres, which was tendered to said Seeley
and by him refused, whereupon said N. V. Leslie paid
Seeley the amount due on said trust deed remaining
after the application of the net proceeds of the said
eleven hundred dollars, to-wit, twenty-one hundred and
fifty-two dollars and eighty-five cents, and took up said
note and deed of trust on about March 21, 1896; that
on said 6th day of March, at the time of the execution
of said bond to redeem, said Joseph P. Duell and his
wife executed and delivered to N. V. Leslie and F. N.
Cowell their general warranty deed, in the usual form,
conveying the lands in question to said Leslie and
Cowell for the expressed consideration of twenty-five
hundred dollars, which deed is of record in book 56 at
page 332 of aforesaid deed records. And at the same
time Joseph P. Duell, N. V. Leslie and F. M. Cowell
entered into the written contract set forth in plaintiffs'
petition, a copy of which marked 'Exhibit A' is hereto
attached; that at the time said Leslie took up the note
and deed of trust aforesaid about the 21st day of
March, 1896, said F. M. Cowell conveyed his interest
in the lands in question to N. V. Leslie by quit-claim
deed of record in book 48 at page 442 and being in
the usual form; that neither Joseph P. Duell, nor said
Leslie or Cowell found a sale for said land before
March 1, 1897, and that the said Joseph P. Duell oc-
cupied said farm from March 6, 1896, until the 27th
day of April, 1897, and he then with his family moved
away and delivered possession of said farm to said
N. V. Leslie; that said N. V. Leslie paid back taxes
on said farm to the amount of eighty-seven dollars
and sixty-two cents and that in 1900 said N. V. Leslie
conveyed the lands in question, together with other
lands, to his son, G. E. Leslie, by a general warranty

deed in the usual form for the expressed consideration of one dollar, the lands so deeded being a gift, which deed is of record in book 67 at page 305; that said N. V. Leslie and G. E. Leslie have been in the possession of said lands ever since said Joseph P. Duell moved away from same and have received the rents and profits, paid taxes thereon and made improvements; that said G. E. Leslie is the sole heir to N. V. Leslie and the administrator of the estate of said N. V. Leslie, now deceased, and that final settlement of said estate has been made and that said N. V. Leslie and G. E. Leslie during all the time mentioned were solvent.

"All the instruments referred to in this stipulation shall be considered in evidence.

"10th August, 1905.

"J. P. DUELL et al.,

"By his Attorneys, Smoot, Boyd & Smoot.

"N. V. LESLIE et al.,

"By Mudd & Pettingill & J. M. Jayne, their attorneys."

Attached to said stipulation and referred to therein as "Exhibit A" and read in evidence as follows:

"EXHIBIT A.

"Memphis, Mo., March 6, 1896.

"This agreement made and entered into by and between J. P. Duell, of Scotland county, Missouri, party of the first part and N. V. Leslie and F. M. Cowell, of Memphis, Missouri, Scotland county, parties of the second part.

"Witnesseth: That whereas, J. P. Duell has had his land sold at trustee's sale, to-wit: The north three-fourths of east fourth, section sixteen, township sixty-four north, range eleven west fifth principal meridian, in Scotland county, Missouri, on the 4th day of March, 1896, and whereas he is desirous to save what he can out of the same and whereas he is desirous to give bond

to redeem said land as provided by law and whereas said Leslie and Cowell have signed his bond to redeem given said Eli Seeley and whereas said Duell has deeded said land to said Leslie and Cowell, they are to furnish the necessary money to redeem said land within the year 1896, and to pay off taxes and claims against said land to an amount in all not to exceed $2,500, including Seeley's debt.    It is agreed that either said Leslie and Cowell or said Duell may find a chance to sell said land at not less than $27.50 per acre within the year 1896, and on said sale said Duell is to give peaceable possession on March 1, 1897, to purchaser or purchasers. Out of the proceeds of said sale shall first be paid the amount of money expended in redeeming said premises, all taxes, judgments and liens on said place and all costs incurred by Leslie and Cowell in redeeming or defending said land and eight per cent interest thereon from time paid out by them.    Said Duell to be charged rent at $250 per year, which he agrees to pay said Leslie and Cowell.    Then on said sale the surplus proceeds of sale after paying off all claims, interest and costs shall be equally divided.    One-half to said J. P. Duell and one-half to said Leslie and Cowell.    The term surplus to include rent aforesaid.    Should either party fail to find a sale for said lands before March 1, 1897, then this contract to be at an end and said land to be considered as deeded absolutely to said Leslie and Cowell and said Duell to give possession without further notice on March 1, 1897, delivering the place in as good condition as it is at present.

"Witness our hands on the day and date first-above written.

" (Signed in duplicate).

"J. P. DUELL,
"N. V. LESLIE,
"F. M. COWELL."

Subsequently and before the cause was submitted, the further stipulation and agreement as to facts was submitted:

"In the Circuit Court of Scotland County, August Term, 1905.

"Now at this day, August 29, 1905, come the parties hereto in person and by attorneys and file by leave of court their further stipulation and agreement of facts in the above-entitled cause, to-wit:

"It is agreed that the yearly value of the rents and profits of the lands in question is two hundred and fifty dollars from 1897 to 1904 inclusive.

"It is agreed that the defendants have expended in repairs and improvements on the lands in question since May 17, 1897, four hundred and fifty-four dollars and sixty-nine cents and that said expenditures were made at the times and on the date set out in the itemized account hereto attached and marked 'Exhibit B.'

"J. A. WHITESIDE and SMOOT, BOYD & SMOOT,
                    "Attorneys for Plaintiffs.
"J. M. JAYNE and MUDD & PETTINGILL,
                    "Attorneys for Defendants."

There was attached to this stipulation "Exhibit B," as designated in the stipulation, embracing an itemized account of the expenditures, amounting to the sum as set forth in the foregoing stipulation. It is not essential that this itemized account be here reproduced.

As before stated, this cause was submitted to the court without the aid of a jury upon this agreed statement of facts and the court found the issues for the defendants and rendered judgment dismissing plaintiff's bill and denying the relief sought by such bill. Timely motions for new trial and in arrest of judgment were filed and by the court overruled. From the order and judgment dismissing plaintiff's bill and deny-

ing the relief, this appeal is prosecuted to this court, and the record is now before us for consideration.

## OPINION.

The record in this cause, which is now before us, in effect propounds to this court the question as to what its conclusions of law are upon the agreed statement of facts disclosed by the record. The agreed statement in effect stands in lieu of a special verdict and must be treated as such, and we are simply confronted with the proposition to give expression to our conclusions of the law applicable to such agreed statement of facts.

It is manifest that upon the agreed statement of facts the overshadowing question to be determined in this proceeding is as to whether or not the warranty deed, to which reference is made in the agreed statement, executed by the plaintiffs to Leslie and Cowell, upon the facts as recited in such agreed statement, should be declared a mortgage. At the very inception of the consideration of this proposition, we find that upon the subject that deeds absolute on their face may be shown by a separate instrument or contract to be a mortgage, and as to the essential requisites of a mortgage and the distinguishing features between a mortgage and a conditional sale, there is practically no dispute between learned counsel for appellants and respondents as to the rules of law applicable to that subject. This controversy therefore is narrowed down to the question of the proper application of the rules of law, about which there is no dispute, to the facts embraced in the agreed statement. In other words, we have on the one side the contention that the facts as recited simply make this warranty deed a mortgage under the well-settled rules of law applicable to that subject. On the other side we have the equally earnest contention that the facts recited in the agreed statement

clearly make the conveyance involved in this controversy a conditional sale upon the well-settled rules of law applicable to that subject, and also that the facts agreed upon negative any intention on the part of the parties to the contract of conveyance at the time of the execution of it that it should be treated as a mortgage to secure an indebtedness due from the plaintiff Duell to Leslie and Cowell.

## I.

In equity a deed, although absolute on its face, may be shown to be a mortgage and courts in the exercise of their equity powers may declare it to be a mortgage and permit the grantor to redeem. About this proposition there can be no doubt. In Brant v. Robinson, 16 Mo. 129; Wilson v. Drumrite, 21 Mo. 325; Slowey v. McMurray, 27 Mo. 113; Worley v. Dryden, 57 Mo. 226; Reilly v. Cullen, 159 Mo. 322; Gerhardt v. Tucker, 187 Mo. 46, and many other cases, this equitable doctrine is fully recognized.

## II.

A conveyance absolute upon its face will not be held to be a mortgage unless the relation of debtor and creditor exist between the grantor and grantee. In order to warrant the conclusion that the warranty deed in the case at bar was a mortgage, it is essential that the facts as agreed upon should show the existence of a debt due from the plaintiffs to Leslie and Cowell, and that it was the intention of the parties to the contract of conveyance in the execution of such warranty deed to secure the payment of such debt, or at least the facts agreed upon should be of that nature and character from which the legitimate inference might be indulged that such was the intention of the parties at the time of the execution of the warranty deed.

In the recent case of Jones v. Hubbard, 193 Mo.

147, it was expressly ruled by this court that in order to convert a deed absolute upon its face into a mortgage it was essential that it should be alleged in the petition that there was a loan and that both parties so understood it at the time of the execution of the deed, and that it was not sufficient that one of the parties to an instrument of conveyance absolute in its terms intended it only as a mortgage. It was also ruled in that case that the allegation as above indicated was essential in order to form a basis for the introduction of the proof of such averment. The conclusion finally reached in that case was that there were none of the usual concomitants of a mortgage, such as a loan; an obligation on the part of the grantee; a promise to allow the grantee to redeem, stated in the petition; and Judge GANTT, speaking for this court, in finally announcing the conclusions in that case, said: "Again and again it has been ruled that the one sure test and essential requisite of a mortgage has ever been the continued existence of a debt from the grantor to the grantee in the deed. If there is no debt the instrument cannot be a mortgage, whatever else it may be. [Bobb v. Wolff, 148 Mo. 344.] In Bailey v. St. Louis Union Trust Company, 188 Mo. l. c. 492, it was pertinently said: 'If this absolute deed is a mortgage it is not so because of anything contained in it or in the agreement, but because of something outside of both by which the natural force and effect of these instruments must be controlled and varied. There is but one thing that can be shown under all the authorities that could have that effect, and that is that the deed, though absolute in form, was in fact given as a mere security.'"

Mr. Jones, in his treatise on Mortgages (3 Ed.), sec. 269, in discussing the subject now under consideration, says: "There can be no mortgage without a debt. There may be agreements for the performance

of obligations other than the payment of money; but leaving these out of view, it is essential that there be an agreement, either express or implied, on the part of the mortgagor, or some one in whose behalf he executes the mortgage, to pay to the mortgagee a sum of money either on account of a pre-existing debt or a present loan." This is the universally recognized doctrine applicable to the essential requisites of a mortgage; hence with this conclusion of what are the essential requisites of a mortgage and the necessity of such requisites being established by the facts in proof, we are then confronted with the proposition as to whether the agreed statement of facts upon which this cause was submitted establishes the relation of debtor and creditor between the plaintiff Duell and Leslie and Cowell to whom the warranty deed was executed, and whether or not the facts recited in the agreed statement are of such a nature and character from which the legitimate inference may be indulged that at the time of the execution of the conveyance they intended it only as a mortgage.

Measured by the rules of law as herein indicated, we see no escape from the conclusion that the agreed statement of facts upon which this cause was submitted absolutely fails to establish the ultimate fact which is sought to be reached by this proceeding, that is, that the warranty deed executed by the plaintiff was executed for the purpose of securing a debt due by the plaintiff, and therefore was insufficient to warrant the court in treating the conveyance as simply a mortgage to secure a debt due by the plaintiff to Leslie and Cowell. On the other hand, a careful analysis of the agreed statement of facts demonstrates that the conveyance of this land by the plaintiffs to Leslie and Cowell was a sale of it, burdened with and qualified by the condition contained in the agreement embraced in the agreed statement of facts which was entered into

contemporaneously with the execution of the conveyance. It will be observed that the warranty deed is executed for the express consideration of $2,500 and the agreement recites the facts that Leslie and Cowell were to furnish the money to redeem this land from Mr. Eli Seeley and this agreement in its last analysis amounts to nothing more than this, that the plaintiff, J. P. Duell, was unable to redeem this land from Mr. Seeley and as indicated by the agreement, he did not expect that he could save the land itself, but as recited in the agreement he was desirous of saving what he could out of the land; therefore, for the purpose of giving the plaintiff, Mr. Duell, an opportunity of saving something out of this land, it was agreed that either said Leslie or Cowell or said Duell might find a chance to sell said land at not less than $27.50 an acre within the year 1896, and on said sale said Duell was to give peaceable possession on March 1, 1897, to purchaser or purchasers. Then follows the agreement that "out of the proceeds of said sale shall first be paid the amount of money expended in redeeming said premises, all taxes, judgments and liens on said place and all costs incurred by Leslie and Cowell in redeeming or defending said land and eight per cent interest thereon from time paid out by them. Said Duell to be charged rent at $250 per year, which he agrees to pay said Leslie and Cowell. Then on said sale the surplus proceeds of sale after paying off all claims, interest and costs shall be equally divided. One-half to said J. P. Duell and one-half to said Leslie and Cowell. The term surplus to include rent aforesaid. Should either party fail to find a sale for said lands before March 1, 1897, then this contract to be at an end and said land to be considered as deeded absolutely to said Leslie and Cowell and said Duell to give possession without further notice on March 1, 1897, delivering the place in as good condition as it is at present."

It is manifest that the terms of the agreement as above recited absolutely negative the theory that the warranty deed as between these parties was to be treated as a mortgage. There is not a word embraced in the entire agreement which indicates that Mr. Duell, the plaintiff, might redeem this land and have it reconveyed by Leslie and Cowell to him, and if it was understood that this was a mortgage, taken as a security for a debt, we are unable to comprehend why it was that Mr. Duell was agreeing to divide the proceeds with Leslie and Cowell over and above the amount of money they furnished in the extinguishment of his debt, for if it was understood that this warranty deed was simply to be held as a mortgage and security for the repayment of the money furnished by Leslie and Cowell, then clearly it should have simply provided that Mr. Duell should have the right to pay the amount of money furnished for the extinguishment of his debt and take a reconveyance of the land to him; or if the land was sold during the year 1896 for not less than $27.50 an acre, then the proceeds over and above the amount necessary to repay Leslie and Cowell for the amount of money furnished in redeeming the land from Seeley, together with all expenses incurred, should be paid over to Mr. Duell. The agreement embraced no such terms, nor does it embrace any language from which a legitimate inference might be drawn that it was the intention of the parties in the execution of the warranty deed that it should be held and treated as a mortgage. This agreement manifestly was intended to give Mr. Duell a last chance to save something out of this land and postpone for at least a year the evil day when he would be required to give possession of it under his conveyance, and allow him the opportunity of at least trying to effect a sale of the land for a sum not less than $27.50 an acre and thereby secure some of the

proceeds, as is indicated by the terms of the agreement.

Jones, in his work upon Mortgages (3 Ed.), section 270, thus states the rule of law as applicable to the case at bar. He says: ''Where the grantee's covenant, executed at the same time with an absolute conveyance to him, recited that this was made for the purpose of paying a certain sum of money, and stipulated that he would not convey the premises within one year without the consent of the grantor, and, if the grantor, within that time, should find a purchaser, the grantee would convey the land on receiving the amount with interest for which the land had been conveyed to him; and that in case such sale should not be made within the year, it should then be submitted to certain persons named, to determine what additional sum the grantee should pay for the land, which sum he covenanted to pay, the transaction was held not to be a mortgage, but a conditional sale giving the grantee the right to recover possession of the land, after the expiration of the year, in ejectment against the grantor. In like manner an agreement by the grantee made as a part of the transaction whereby he is to account to the grantor for a portion of the profits which may be realized on a resale of the premises if made within a specified time, and requiring him to sell if a specified price can be obtained, is not inconsistent with the vesting of the title.''

It must not be overlooked, as was said in Bailey v. Trust Co., 188 Mo. 1. c. 492, that the ultimate fact in all the cases which converts an absolute deed into an equitable mortgage is that it was given merely as a security.

The plaintiff, Mr. Duell, executed his warranty deed to the land involved in this controversy doubtless with the understanding that Leslie and Cowell would extinguish his debt to Mr. Seeley. It follows that

Leslie and Cowell, in order to perfect their title and give force and vitality to the conveyance executed to them by Mr. Duell did pay to Mr. Seeley the amount of money due by the plaintiffs, thereby extinguishing his debt. This court, in Bobb v. Wolff, 148 Mo. l. c. 348, in discussing the law applicable to this subject, said: "The distinction was early made by this court in Slowey v. McMurray, 27 Mo. 113, in which Judge Scott adopts Chancellor Kent's text with approval to the effect 'that if the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage, but if the debt is extinguished by the agreement of the parties or the money advanced was not by way of loan and the grantor has the privilege of refunding if he pleases by a given time, and thereby entitling himself to a reconveyance it is a conditional sale.' As already said, when Wolff surrendered his note and unconditionally assumed the $4,000 mortgage to another person, the debt was extinguished. There was left no basis for a mortgage, and it is far more consonant with reason and common business experience to say that if this evidence tends to prove any agreement with certainty, it was no more than an agreement to permit Bobb within a limited time which had expired prior to November 17, 1886, to repurchase the lot, and having failed and not having brought himself within his agreement, he has lost that right." [Citing Turner v. Kerr, 44 Mo. 433; Forrester v. Moore, 77 Mo. 661.]

We have been unable in any of the adjudications to find the proposition now under consideration more logically and clearly presented than in the case of Turner v. Kerr, 44 Mo. 429, and what was said by this court in treating of the question now under consideration is so appropriate to the case at bar that we will be pardoned for making such a lengthy quotation. It was there said:

"In considering the subject, it is at once to be

admitted that a conveyance to secure a subsisting debt is a mortgage, whatever may be the form of the deed, or however absolute it may appear upon its face. It is also true that, where the facts of the transaction leave it questionable whether a mortgage or a conditional sale was intended, the doubt is to be resolved in favor of the theory of a mortgage.

"But it is not true, as a result of the adjudged cases, that a deed absolute in its terms, delivered in payment of a debt, is converted into a mortgage merely because the grantee therein (the creditor) gives a cotemporaneous stipulation binding him to convey on being reimbursed, within an agreed period, an amount equal to his debt and the interest thereon.

"In passing on transactions of this class, the understanding and purpose of the parties thereto are to be considered and respected as in other cases. If they intended an extinguishment of the debt, and the vesting of an absolute title, subject only to an agreement to reconvey upon specific terms—as a payment of an amount equal to the canceled debt and interest—the objects of the arrangement are not to be defeated by turning the transaction into a mortgage, when the parties intended no such result. That the amount of money to be paid as a condition to the right to demand a reconveyance is measured by the amount of the debt and interest, is a circumstance of no controlling importance. It settles nothing. It may often happen that a creditor would consent to take an absolute stipulation for a reconveyance, when he would reject a mortgage because of the delay and expense to which he might be subjected upon a foreclosure. Such arrangements operate beneficially to the debtor, securing to him additional time and renewed opportunities to extricate himself from embarrassment. Where the parties intend a conditional sale, and not a mortgage, and make their

207 Sup.—43

contracts in accordance with their intentions, it is not the province of the courts to circumvent and frustrate their intentions. It is nevertheless true that neither the intention of the parties nor their express contracts can change the essential nature of things. A conveyance to secure a debt is a mortgage, and the stipulations of the parties cannot make it otherwise. But a conveyance to pay a debt is a totally different affair. If the conveyance extinguishes the debt, and the parties so intend, so that a plea of payment would bar an action thereon, a subsequent or cotemporaneous stipulation in the interest of the debtor, securing to him an opportunity to reacquire the title, ought not to be construed to the creditor's prejudice. Such a transaction is no mortgage, but a conditional sale."

In Slowey v. McMurray, 27 Mo. 113, the question in judgment before the court was as to whether or not the conveyance was to be construed as a mortgage or a conditional sale. The facts in that case were substantially as follows: Slowey owned a lot in St. Louis subject to a deed of trust to secure $616 due in twelve months, and $682 due in twenty-four months. McMurray loaned Slowey $300, and Slowey gave McMurray $316 and the money thus loaned, and with it McMurray paid off the $616 note when it became due, and took the note up and kept it. Slowey paid $200 on the McMurray debt. When the $682 became due Slowey failed to pay it, and the trustee advertised the same for sale. Before the sale it was agreed between Slowey and McMurray that McMurray should bid the same off in his own name for the benefit of Slowey, pay the said $682, and if Slowey would pay back to said McMurray within one year the $682 and $150 balance due on the $300 loaned by McMurray, McMurray would reconvey the lot to Slowey. McMurray bid in the land for $1,005, August 14, 1855, and by agreement Slowey occupied the property in

the meantime. McMurray sold the lot to Ackerman November 17, 1855, who bought the lot with knowledge of the above facts, and Slowey sued to annul the deed to Ackerman, and if the court should not cancel the deed, then he asked judgment for $323, the overplus, and $995, the value of the land and improvements over $1,005. After the year passed by Slowey tendered to McMurray the full amount which was due him, with interest. Judge Scott, speaking for this court, after an exhaustive review of all the authorities applicable to this subject, said: "Making an application of these principles to the case before us, it will be seen that the contract or promise made by McMurray, even if binding in law, constituted the transaction a conditional sale and not a mortgage; that the party plaintiff not having complied with the terms of the sale, he cannot insist on a reconveyance of the lot."

In Macaulay v. Porter, 71 N. Y. 1. c. 176, it was claimed, as in the case at bar, that a deed though absolute in form was in effect only a mortgage. The facts in that case upon which the claim was predicated, were substantially as follows: That Miss Tracy applied to defendant Porter to make a sale of the land for her, which he was not able to do; that she then applied to him to purchase the land himself, which he agreed to do, and pay therefor $2,500—$1,200 by assuming the existing mortgage, and $1,300 in cash— and further agreeing that he would sell the property within one year, at the discretion of Miss Tracy and himself, and divide the profits equally with her; and if not sold within the year, Miss Tracy's interest in the premises to cease; that before the arrangement was consummated, Miss Tracy ascertained that she needed more money, and Porter agreed to loan her $500 on her note, at one year; that in pursuance of this agreement, Miss Tracy executed and delivered the deed in question, and the parties at the same time executed

a written agreement, under seal, as follows: "In consideration of the sale and conveyance of a lot, forty-four feet front by 408½ feet deep, on the east side of Alexander street, by Miss L. Tracy to S. D. Porter, I, S. D. Porter, agree to take said property subject to a mortgage to the Rochester Savings Bank of $1,200; all other incumbrances and taxes to be paid off by Miss Tracy; and I will pay her in cash, $1,300 and I will sell the property, at her discretion and mine, within the year, and divide the profits equally. I will loan her $500, and take her note, to be paid within the year, or sooner, if the property is sold. If the property shall be sold for $4,000 within four months, I will cancel the note and surrender it to her. The premises may be sold at the option of either party for not less than $4,000. If not sold within one year from date, all interest of Miss Tracy in the premises shall cease." Responding to that state of facts it is said by the court in that case: "Upon these facts, the court held that the defendant Porter, under his deed, took the fee of the land, subject to no other condition than that he should account to Miss Tracy for one-half of the profits on a sale thereof if made within the year, and that the plaintiff's mortgage was void as to him. It is difficult to see how the court could have arrived at any other conclusion. The agreement was not a defeasance, which was to render the deed void on the payment of any sum of money, nor was there anything in the transaction in the nature of a mortgage. Porter was not a creditor, taking the land to secure any debt. No debt existed or was created in respect of the $2,500 paid for the property. If the land had depreciated, Porter would have had no claim for reimbursement, nor was any privilege reserved to Miss Tracy to redeem it on payment of any sum. These circumstances are of great importance in determining the character of the transaction. There was no condition attached

to the grant, upon which it was to become void and the property revert to the grantor.   The agreement clearly shows that the title was to pass to Porter; that he should have power of disposition over it, and that all he undertook to do was to account to his grantor for one-half of the profits which might be realized by him on a resale if made within the year, and that he would not sell within the year for less than $4,000 without the consent of Miss Tracy.   Such an agreement is not inconsistent with the vesting of the title in him, and to record such a deed and agreement as a mortgage would have been clearly improper." To the same effect is Glover v. Payn, 19 Wend. 518.

In Baker v. Thrasher, 4 Denio (N. Y.) 493, substantially the same legal propositions were involved as in the case at bar.   There was an absolute deed executed, which was qualified by a covenant executed on the same date, reciting that the conveyance was made for the purpose of paying a sum of money which was unsatisfied and covenanting that he would not convey the premises within one year without the consent of the grantee in the absolute deed, and if the grantor within that time found a purchaser the grantee would convey to such purchaser, on receiving the amount with interest for which the land had been conveyed to him, and it was further recited that in case such sale should not be made within a year it should then be submitted to certain persons named, to determine what additional sum the grantee should pay the grantor for the land conveyed in the absolute deed, which sum the grantee covenanted to pay.   It was held in the case that the transaction did not amount to a mortgage and that the grantee was entitled to recover in judgment against the grantor for the land.   Chief Justice BRONSON, speaking for the court, in discussing the absolute deed and the contemporaneous instrument qualifying it, said: "These two instruments must undoubtedly be read

and construed together; but they do not make a mortgage. A mortgage is a conveyance of lands, upon a condition in the deed, or a defeasance out of it, that on the grantor's paying a sum of money, or doing some other act, the conveyance shall be void; and performance of the condition, without any other act, puts an end to all title and interest in the grantee. Some modern cases have held, and such are cited at the bar, that although there be no condition or defeasance under which the deed may be avoided, but only a collateral agreement that the grantee will reconvey to the grantor on payment of the money, the transaction amounts to a mortgage. But this is not a case of that kind. There was no condition or agreement under which the title could ever become revested in the grantor. It was to remain in the grantee, or the person to whom he should convey in pursuance of the covenant. And besides, the conveyance to the plaintiff was not by way of *security* for the debt which the defendant owed the plaintiff; but in *payment* of the debt. No debt or duty of any kind remained upon the defendant. It was in any and all events a sale of the land. It was a sale for the consideration of $1,160.25, which the defendant then owed the plaintiff, and which debt was satisfied by the conveyance; and the further consideration of the covenants which the plaintiff made to pay off the judgment, and give the defendant any better price which could be obtained for the land within a year; and if the land should not be sold within the year, then to pay the defendant such further sum for the land as might be determined by the award of arbitrators. It is impossible to hold that this is a mortgage, or anything in the nature of a mortgage.''

We see no necessity for pursuing any further the consideration of the propositions disclosed by the record. We are clearly of the opinion that the agreed statement of facts does not establish one of the legiti-

mate facts to be alleged, that is, that the relation of debtor and creditor existed between Mr. Duell and Leslie and Cowell, and the facts agreed upon are insufficient to warrant the conclusion that the warranty deed executed by Mr. Duell to Leslie and Cowell was only a mortgage, or that the parties to the warranty deed, at the time of its execution, intended that it should only be treated as a mortgage. It is manifest that upon the agreed statement of facts Leslie and Cowell or the grantees of their interest in this land could not have successfully maintained a proceeding to foreclose the transaction respecting the warranty deed as an equitable mortgage, and it is equally clear that had this land depreciated in value and upon a resale of it had failed to realize the amount that they had expended in the extinguishment of Mr. Duell's debt to Mr. Seeley, a recovery could not be had against Mr. Duell for the difference between the amount realized from the sale and the amount paid in the extinguishment of Mr. Duell's debt. This could not be done for the reason that upon the agreed statement of facts the relation of debtor and creditor is not shown to exist.

In reaching the conclusions upon the propositions presented to our consideration in this cause we have not been unmindful of the authorities cited by learned counsel for appellant. We have carefully considered the cases cited, and it is sufficient to say of those cases that the facts upon which the conclusions were announced distinguish them from the case at bar.

We have given expression to our views upon the questions presented by this record, which result in the conclusion that the judgment of the trial court in denying the relief sought by the plaintiffs and dismissing their bill should be affirmed, and it is so ordered.

All concur.