Cecilia PARRISH, Fomerly Cecilia Gilbert, Plaintiff-Appellant,

v.

Louella Lorena McDANIEL, Formerly Louella Lorena Gilbert, Edward W. Garnholz and Arnold J. Willman, Coadministrators of the Estate of Elmer R. Gilbert, Deceased, Robert D. Gilbert, Commodore Gilbert, Walter Gilbert, Myrtle L. Nichols, Mrs. Edwin Leroy Gilbert, Wilbur E. Gilbert and Ruby Henson, Defendants-Respondents.

No. 48882.

Supreme Court of Missouri,

Division No. 1.

June 11, 1962.

Joseph J. Becker, Wm. J. Becker, Clayton, for plaintiff-appellant.

Edward W. Garnholz, Arnold J. Willmann, Clayton, for respondents.

HOUSER, Commissioner.

This is a suit to quiet title (Section 527.-150, RSMo 1959, V.A.M.S.) in which plaintiff seeks equitable relief. The circuit court dismissed plaintiff's petition at the close of her case and she has appealed.

We have jurisdiction because this appeal involves the title to real estate within the meaning of Constitution of 1945, Art. 5, § 3, V.A.M.S.

Respondents filed a motion to dismiss the appeal for failure to comply with Supreme Court Rule 83.05, V.A.M.R. We have determined that the case should be decided on the merits. Accordingly, notwithstanding appellant's brief is subject to criticism, the motion to dismiss the appeal should be

and is overruled. Jacobs v. Jacobs, Mo. Sup., 272 S.W.2d 185, 188.

Plaintiff's evidence follows: In 1931 the land in question, a farm in Ste. Genevieve County, was deeded to plaintiff, Cecilia, the wife of Elmer R. Gilbert. Cecilia and Elmer moved onto the farm in 1932 and lived there until early in the spring of 1937. The farm was encumbered by a deed of trust to secure a note in favor of William D. Stites. There was an overdue and unpaid principal balance of $1700. Interest was overdue and back taxes on the property were unpaid. The principal balance, interest and taxes amounted to approximately $2500. Cecilia and Elmer also owed money to Elmer's sister, Louella Gilbert (now McDaniels), for money advanced to Cecilia and Elmer on the farm and for equipment. Cecilia and Elmer were in serious financial difficulty and in danger of foreclosure of the deed of trust. In the spring of 1937 they moved to Clayton, where they took up residence with Elmer's mother, his brother and his sister, Louella Gilbert. While they were living in the same house and on August 16, 1937 Cecilia and Elmer executed and delivered to Louella a warranty deed to the farm, absolute on its face, subject to the deed of trust held by William D. Stites. This deed was filed for record on February 28, 1938.

On August 17, 1937, as part of the same transaction, Louella executed the following paper writing, which was prepared and executed at Cecilia's request, and filed for record on February 28, 1938:

### EXHIBIT "A"

"THIS INDENTURE WITNESSETH: That whereas, Cecilia Gilbert, is the owner in fee simple title to a certain farm containing 1,075 acres more or less, near Weingarten, Ste. Genevieve County, Missouri, and Whereas, there is a certain Deed of Trust against said farm, securing principal note and Interest notes, owned by one, William Stites on which there is due $1700.00, more or less principal, and in-

terest and on which land there is back taxes due of about three years, making the total amount due on said Deed of Trust, principal, interest and back taxes of approximately $2500.00 more or less. Also Any money advanced to Cecilia Gilbert & Elmer R. Gilbert on Farm and Equipment. Whereas, said Cecilia Gilbert and Elmer R. Gilbert her husband, have executed a Warranty Deed transferring title of said property to one, Luella Gilbert with the agreement and understanding between said Cecilia Gilbert and said Luella Gilbert that said Luella Gilbert is to pay said notes owned or held by said Stites secured by said deed of trust and to pay back taxes on said land, that if at any time within two years from this date, said Cecilia Gilbert (and Elmer R. Gilbert) sells said land, and pays to said Luella Gilbert whatever amount she has advanced on account of said Deed of Trust, notes, interest or taxes, said Luella Gilbert will cause to be executed whatever deed or conveyance as may be necessary to transfer the title to said property into the name of said prospective purchaser.

"It is further agreed between Luella Gilbert and Cecilia Gilbert, there will be no lease executed for more than Twelve Months, subject to sale of property during the Two years allowed to redeem."

On August 16, 1937, as part of the same transaction, Louella executed a deed of trust on this land in favor of William D. Stites to secure seven notes signed by her: a principal note for $4000 due three years hence, and six interest notes, each for $120, due at six-month intervals. The $4000 deed of trust was filed for record on August 18, 1937. The recorder of deeds testified that after having been recorded it was mailed to Louella at her address in Clayton. There was some indefinite and inconclusive evidence, excerpted from Louella's deposition, to the effect that if the $4000 deed of trust was mailed to Louella it was in her possession, and that if she had it "it was possible" she gave it to Elmer on April 8, 1949 when she delivered a warranty deed to the

farm to Elmer; and that the $4000 deed of trust "was never used as collateral to make a loan." There was no evidence, however, that the $4000 note was not delivered to Stites so as to become a binding obligation, or that Louella did not receive the consideration referred to in the deed of trust, namely, $4000 "in cash."

Cecilia never had possession of the farm after August 17, 1938. Louella had exclusive possession and control of the property until April 8, 1949. Louella did not exercise this control personally but did so through her brother Elmer, who rented the farm to various persons. Timber was cut from the farm and the land was cultivated. Cecilia received none of the rents or profits. Elmer and Louella sold the timber but there was no evidence as to the amount of the income they received from timber or crops. There was no evidence of any statements of receipts and expenditures made by Louella to Cecilia through the years. During the two-year "redemption" period, and on October 18, 1938, Cecilia wrote Louella a letter asking for an itemized account "of the money which Elmer borrowed from [Louella] while he was operating the farm, also itemized account of whatever [Louella] spent when [she] took over this farm in August 1937 * * *. In other words, I want the amount that we owe you on the farm deal. On this report will you also please show the amount that has been paid off." There is no evidence that Louella complied with this request. Between August 17, 1937 and August 17, 1939 Cecilia tried to sell the farm, but there is no substantial evidence that she was able to find a purchaser during this period.

On August 16, 1939, at the request of Cecilia, Louella entered into and executed the following written agreement with Cecilia, which was filed for record on September 1, 1939:

## EXHIBIT "B"

"THAT WHEREAS, Cecilia Gilbert is the owner in fee simple title to a certain farm containing one thousand seventy-five (1,075) acres, more or less, near Weingarten, Ste. Genevieve County, Missouri; and

"WHEREAS, on the 17th day of August, 1937, Luella Gilbert entered into a certain agreement concerning the ownership of said property, which said agreement was recorded in the Office of the Clerk of the Circuit Court and ex officio Recorder of Deeds within and for the County of Ste. Genevieve, State of Missouri, on the 28th day of February, 1938, in Book 113, page 439.

"NOW THEREFORE, for and in consideration of the sum of One Dollar ($1.00) to me in hand paid, the receipt of which is hereby acknowledged, I, the undersigned Luella Gilbert, hereby extend the period of time for redemption of said property by Cecilia Gilbert and Elmer R. Gilbert, mentioned in said instrument, for six (6) months from this date, thereby creating new date of termination of said agreement on the 17th day of February, 1940, and on said date said redemption agreement shall become null and void without further evidence being filed of record."

During this six-month extension period Cecilia found no purchaser.

Sometime after the execution of these instruments Cecilia and Elmer became estranged and Cecilia was awarded a divorce from Elmer on March 7, 1944.

On April 8, 1949 Louella executed and delivered a general warranty deed to the farm to Elmer. This deed was not recorded until April 17, 1959, after the death of Elmer, which occurred on January 7, 1959. Cecilia did not have actual knowledge of Louella's warranty deed to Elmer until she found it of record in a search made at the office of the recorder of deeds sometime after April 17, 1959. The $4000 deed of trust from Louella to William D. Stites was satisfied of record on July 20, 1959.

Cecilia testified that at no time did Louella sue Cecilia to foreclose "the mortgage

on this property," or to adjust the equities between Louella and Cecilia, or to determine "the amount of money, if any" that Cecilia may have owed Louella.

There was no evidence of the value of the farm at any time between 1931 and the time of trial, which occurred in January, 1960. There was no evidence of the amount of money advanced by Louella to Cecilia and Elmer on the farm and equipment prior to August 17, 1937.

Cecilia filed this suit on October 30, 1959, naming as defendants the coadministrators of Elmer's estate, and Elmer's heirs, including Louella.

Plaintiff's theory of the case as revealed by her petition, briefs and argument is that the foregoing created the relationship of mortgagor and mortgagee as between Cecilia and Louella; that by this transaction it was intended that Louella use the proceeds of the $4000 note and deed of trust *to obtain a loan for Cecilia* in a sum sufficient to discharge the $1700 note and deed of trust, interest and back taxes in the total sum of "approximately $2500"; that thus Louella became an equitable mortgagee; that *during the time of her exclusive possession of the farm from 1938 until April 8, 1949 Louella received income from farm operations and timber sales in an amount sufficient to pay and satisfy the $2500 loan and interest thereon; that Cecilia repeatedly offered to pay and tendered Louella the $2500 plus interest but that Louella refused to accept the payment or tender; that Louella made and breached oral agreements to arbitrate and fix the amount of the debt and that Cecilia could pay the debt and recover the farm, or at her option Louella could pay Cecilia the value of the farm over and above the debt;* that Louella never converted her equitable interest as mortgagee into a legal interest by foreclosure, and therefore had no title to convey to Elmer in 1949; that Elmer held the title under a resulting trust for the benefit of Cecilia, the true owner, who had no knowledge of the deed from Louella to

Elmer until after it was recorded in 1959, following Elmer's death. Cecilia seeks to have the title adjudged in her and in effect contends that Louella should be adjudged an equitable mortgagee whose claims have been paid and satisfied and that Louella has no present interest in the farm; that Elmer should be declared to have been a trustee of the title for Cecilia's benefit, and Elmer's heirs be found to have no title or interest in the property. (The matter italicized was not proved.)

A fact necessary and indispensable to hold a deed absolute on its face to be a mortgage is that the deed, although absolute in form, was in fact given as a mere security for a debt. Bailey v. St. Louis Union Trust Co., 188 Mo. 483, 87 S.W. 1003, 1005. The existence of a debt is indispensable to the existence of a mortgage. Donovan v. Boeck, 217 Mo. 70, 116 S.W. 543; Powell v. Huffman, 358 Mo. 138, 213 S.W.2d 473; 59 C.J.S. Mortgages § 37, p. 73, fn. 86; Duell v. Leslie, 207 Mo. 658, 106 S.W. 489, 492. Plaintiff's proof did not establish that the relationship of debtor and creditor existed between Cecilia and Louella after the execution of Cecilia's warranty deed, or that the parties at that time intended that the deed operate only as a mortgage. There is a presumption that an absolute, unconditional conveyance of land is what it purports to be, that is, a deed, Ratermann v. Striegel, Mo.Sup., 273 S.W.2d 304, and cases cited l. c. 306, and that presumption was not overcome. While plaintiff showed there was a debt at the inception for money advanced by Louella to Cecilia and Elmer on farm and equipment, and that by the written memorials of August, 1937 Louella assumed and agreed to pay the $1700 due on the note, accumulated interest and back taxes, plaintiff failed to show that these considerations survived and continued to subsist as debts of Cecilia and Elmer after the execution and delivery of the warranty deed to Louella. None of the documentation so indicates, either in express terms or by necessary implication. To the contrary, the

references thereto in Exhibit "A" appear to be recitals of consideration for the warranty deed rather than acknowledgments of the creation or continuance of a debt. We think it fairly inferable that the $1700 note and interest thereon due William D. Stites and the back taxes were paid and satisfied out of the proceeds of the $4000 deed of trust and that this, together with the debt for farm and equipment advances, supplied the consideration for the giving of the warranty deed; that the liability of Cecilia and Elmer to Louella was thereby extinguished, so there was no debt left remaining to be secured. According to usual business practices, if there was a debt left in force, Stites' $1700 note, when taken up by Louella, would have been transferred and surrendered by Louella to Cecilia, Ratermann v. Striegel, supra, 273 S.W.2d, loc. cit. 311, or a new note would have been given by Cecilia and Elmer for the sum to be paid by them (of which there is no evidence). There was no other evidence of a loan from Louella to Cecilia. No debt was mentioned in the papers. The instruments contain no covenant, promise or undertaking upon the part of Cecilia or Elmer to pay Louella the amount of her advances or payments, or any other sum. See Stafford v. McDonnell, 359 Mo. 925, 224 S.W.2d 951, 955. This is a circumstance of weight, and while not conclusive under our law, Carson v. Lee, 281 Mo. 166, 219 S.W. 629, 633, it has been said elsewhere that " * * * the lack of any binding obligation on the grantor to pay the sum fixed on as the condition for a reconveyance is generally accepted as decisive proof that it was not meant as a mortgage." 59 C.J.S. Mortgages § 38, p. 75. Nor did the evidence indicate that Louella ever demanded of Cecilia the payment of any debt, or that Cecilia ever paid interest or any amount of money on account of the notes or tried to redeem the farm at any time during the 19-year period. "So far as the record discloses, the conduct of the parties, plaintiffs and defendants, has been such as would support the conclusion that the pre-existing debts had been wiped out or merged and no longer existed as legal obligations." Ratermann v. Striegel, supra, 273 S.W.2d 1. c. 311.

We conclude that the terms of the written instruments together with other circumstances shown by plaintiff's evidence clearly reveal a conditional sale—an absolute conveyance, with a contemporaneous agreement to reconvey upon condition—and not an equitable mortgage. The warranty deed was absolute on its face. Exhibit "A" provided for the reconveyance of the land to the prospective purchaser upon certain stated conditions. Under the evidence before the court it appears as a matter of law that the warranty deed satisfied and extinguished the debt for farm and equipment advances and provided the consideration for Louella's assumption of the other obligations against the land; that the agreements manifest an intention on the part of the parties to sell the farm to Louella, with the right on the part of the vendors to resell to others within a limited period, in which case vendee Louella would be obligated to convey to the purchaser upon receiving reimbursement for amounts advanced by her in satisfaction of the $1700 deed of trust, interest and back taxes; that Cecilia and Elmer be given a "last chance to save something out of this land" and postpone for two years and six months the time when they would have to give the land up under the $1700 deed of trust, and to give them a further opportunity to find a purchaser and thus salvage some part of Cecilia's interest in the land, see Duell v. Leslie, 207 Mo. 658, 106 S.W. 489, 492, 493; but if the conditions should not be met within the prescribed time limit, or at the end of the extension period, the redemption agreement was to be void and the sale to Louella would become final, upon failure of vendors to find a purchaser within the "redemption" period. The extraneous circumstances confirm this construction of the documents.

The $4000 note and deed of trust negatives the existence of a mortgagor-mort-

gagee relationship and is inconsistent with plaintiff's theory. By the terms of that deed of trust Louella, representing herself as the owner of the farm, undertook to convey the same in trust, agreeing to pay all taxes, effect insurance on improvements and remove all mechanics' liens. These are not the representations and undertakings ordinarily made by a mere mortgagee, and indicate the true nature of Louella's status, as owner of the fee simple title.

(The fact that Exhibits "A" and "B" recite that Cecilia "is the owner in fee simple title" is not determinative, for Exhibit "A" goes on to recite that a warranty deed had been executed "transferring the title of said property" to Louella and it stands uncontradicted and fully acknowledged by all that such a transfer had been made. Nor does the fact that Exhibit "A" refers to "the two years allowed to redeem" and that Exhibit "B" refers to "the period of time for redemption" determine the question of mortgage vel non. The use of the word "redeem" or "redemption" does not fix the nature of the instrument. These words have more than one meaning in law, and we interpret them in this context as signifying "to purchase back for another." See Carson v. Lee, supra, 281 Mo. 166, 219 S.W., l. c. 631, 632; 59 C.J.S. Mortgages § 10b.(3), p. 37, fn. 39.)

■ The fact that Louella, the grantee, took possession and assumed the management and control of the farm during the "redemption" period (albeit per Elmer) to the exclusion of Cecilia, the grantor, who did not continue in possession, is a circumstance tending to show that a sale and not a mortgage was intended. Cobb v. Day, 106 Mo. 278, 17 S.W. 323; Pahler v. Young, Mo.Sup., 232 S.W.2d 393, 395; 59 C.J.S. Mortgages § 44b., p. 80; 36 Am. Jur., § 157, p. 767. Payment of taxes by the grantee and not by the grantors, Carson v. Lee, supra, 219 S.W., l. c. 633; Bobb v. Wolff, 148 Mo. 335, 49 S.W. 996; Ratermann v. Striegel, Mo.Sup., 273 S.W. 2d 304, 311; 59 C.J.S. Mortgages § 45, and the exercise by Louella of acts indicative of ownership, such as cropping the land and cutting the timber, without Cecilia setting up any claim of right or undertaking to redeem the property, Ratermann v. Striegel, supra, 273 S.W.2d, l. c. 311, or attempting to effect a reconveyance after the expiration of the extension agreement, over the nineteen-year period from 1940 to 1959, 59 C.J.S. Mortgages § 46, and that in April, 1949 she transferred and conveyed the property to another by general warranty deed, all indicate that the warranty deed was not intended as a mortgage, but what it purports to be, an absolute conveyance.

By plaintiff's own proof the transaction was intended as a conditional sale and not a mortgage. Upon the expiration of the extension agreement without Cecilia and Elmer having procured a purchaser and without having repaid Louella the amount of her advances the condition was satisfied, the conveyance became absolute, and Cecilia had no further right, title or interest in the land. The court therefore was justified in dismissing plaintiff's petition at the close of plaintiff's case and we need not consider other impediments to her recovery such as limitations, laches and the requirement that a petitioner in equity do or offer to do equity.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.