Bobb v. Wolff.

Snyder v. Free, 102 Mo. 325; Thompson v. Allen, 107 Mo. 479; Cunningham v. Railroad, 110 Mo. 208; Garrett v. Coal and Mining Co., 111 Mo. 279; Brand v. Cannon, 118 Mo. 595; Jungeman v. Brewing Co., 38 Mo. App. 458.

---

BOBB, Appellant, v. WOLFF et al.

Division Two, February 21, 1899.

1. **Deed in Nature of Mortgage**: REDEMPTION. A court of equity may decree a conveyance absolute in form, to be only a mortgage to secure the payment of a debt and foreclose it as such, or entertain a bill by the grantor therein to redeem the property by satisfying the debt on equitable principles.

2. ———: PRESUMPTION: BURDEN AND CHARACTER OF PROOF. In such case the *prima facie* presumption is that the deed is what it purports to be, an absolute conveyance, and the burden is cast on the grantor to overcome this burden and show it to be a mortgage, and to do that, clear, unequivocal and convincing evidence is required, and if such evidence is not forthcoming the *prima facie* presumption will prevail.

3. ———: ———: ———: TEST: EXISTING DEBT.   One sure test that the deed was intended to be a mortgage is the continued existence of a debt from the grantor to the grantee.   If there is no debt, the instrument can not be a mortgage.   But if the evidence develops an existing debt from the grantor to the grantee, evidenced by a bond or note or other like agreement, not discharged by the conveyance, the deed is only a mortgage.

4. ———: ———: ———: SUBORDINATE TESTS.   Significant evidence, also, is the existence of a collateral agreement by the grantor to pay money;  his liability to pay interest;  the surrender and cancellation of the evidences of debt or the suffering of them to remain outstanding;  the substitution of other notes or bonds in lieu of the old ones;  an application or negotiation for a loan pending the transaction;  and the fact that the grantor is left in possession of the property conveyed.

5. ———: ———: ———: ———: CASE STATED.   The absolute deed recited a consideration of $7,600, and the grantee assumed the payment of an existing mortgage of $4,000.   At the time the grantor owed the grantee a note for $3,600, which had just become due, and this the grantee surrendered at the making of the deed, and took immediate possession of the property and soon spent $3,000 in improvements thereon, collected the rents, and no interest was ever paid by the grantor and none demanded.   When the deed was made the lots were worth $7,600 or $8,000, and $21,000 when the suit was brought, which was after the death of the grantee and the administration, final settlement and partition of his estate.   Two years after the conveyance was made, the grantee offered in writing to permit the grantor to redeem or re-purchase "on terms originally agreed upon" if he did so "at once, although the time is out," but what the terms were was not shown, nor was any acceptance.   Eight years thereafter suit was brought.   Grantee had verbally stated he held the property in trust for the grantor, and at the time handed his sister an itemized statement of the receipts and disbursements made on account of the property since the transfer.   *Held*, that the conveyance must be held to have been an absolute deed, and not a mortgage.

6. ———: ———: ———: ———: LACHES.   Under the circumstances of this case, the grantor's laches alone should defeat his claim that his absolute deed was a mortgage.

*Appeal from St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

T. J. Rowe for appellant.

(1)  The evidence conclusively establishes the fact that the property described in petition was conveyed to Marcus A. Wolff as a security for a debt, and that appellant has the right to redeem.   O'Neill v. Capelle, 62 Mo. 206; Cobb v. Day, 106 Mo. 295; Wilson v. Drumrite, 21 Mo. 325; Worley v. Dryden, 57 Mo. 226; Turner v. Kerr, 44 Mo. 429; Johnson v. Quarles, 46 Mo. 423; Ringo v. Richardson, 53 Mo. 385; Schradski v. Albright, 93 Mo. 48; Turner v. Johnson, 95 Mo. 431; Hack v. Hill, 106 Mo. 18; Bender v. Zimmerman, 26 S. W. Rep. 973.   (2)  Laches is in no defense to this action.   Where an express trust is once shown to exist, it is presumed to continue, and no lapse of time will defeat an action to enforce rights under it.   Lewis v. Hawkins, 23 Wall. 119; Michond v. Girod, 4 How. 561; Prevost v. Gratz, 6 Wheat. 481; Railroad v. Durant, 95 U. S. 576. Laches is never accepted as a defense in a case of an express trust.   Speidell v. Henrici, 120 U. S. 377; Smith v. Ricords, 52 Mo. 591; Kelly v. Hurst, 60 Mo. 463; Bradshaw v. Yates, 67 Mo. 221; Spurlock v. Sproule, 72 Mo. 503.

Hiram J. Grover for respondents.

(1)  Bobb has not established the fundamental proposition that under the "terms originally agreed upon" he had a right to redeem.   (a)  The deed is always the best evidence of the intention of the parties, and is *prima facie* evidence of the verity of its contents.   Ringo v. Richardson, 53 Mo. 385; Worley v. Dryden, 57 Mo. 226; Allen v. Logan, 96 Mo. 591.   (b)  In order to have a deed absolute upon its face declared a mortgage, the proof must be so clear, strong and unequivocal as to banish every reasonable doubt from the mind of the chancellor as to the facts relied on.   Worley v. Dryden, 57 Mo. 226; Ringo v. Richardson,

53 Mo. 385; Rogers v. Rogers, 87 Mo. 257; Philpot v. Penn, 91 Mo. 38; Schradski v. Albright, 93 Mo. 42; Allen v. Logan, 96 Mo. 591; Adams v. Burns, 96 Mo. 361; Burdett v. May, 100 Mo. 13. The burden of proof is upon the party who alleges the absolute deed to be a mortgage; and a mere preponderance of evidence is not enough. The evidence of defendant's verbal admissions is to be received with great caution. Johnson v. Quarrels, 46 Mo.423; Burdett v. May, 100 Mo. 13; Campbell v. Deerborn, 10 Mass. 111. (2) If the "terms originally agreed upon," constituted an actual sale, with the privilege in Bobb to purchase back within a limited time, that was not a trust or a mortgage, and created no right of redemption. If the privilege to repurchase was not exercised within the time limited, it ceased to exist, and the property remained the absolute property of Wolff. 4 Kent's Com. [12 Ed.], p. 144; 2 Wash. Real Prop., p. 59; Teideman Real Prop., sec. 305; 15 Am. and Eng. Ency. of Law, p. 780; Slowey v. Murray, 27 Mo. 113; Turner v. Kerr, 44 Mo. 433; Forester v. Moore, 77 Mo. 661; Davis v. Thomas, 1 Russel and Mylne, 506. (3) Plaintiff declares that he claims not under an implied, resulting trust, but under an "express trust." An express trust of lands must be manifested and proven by some writing signed by the party. R. S. 1889, sec. 5184; Worley v. Dryden, 57 Mo. 226; Forester v. Moore, 77 Mo. 662; Gillespie v. Stone, 70 Mo. 516. (4) Courts of equity view with disfavor suits that are brought long after the transactions litigated occurred and long after death has sealed the lips of those familiar with the occurrences so remote in point of time. Burdett v. May, 100 Mo. 13; State ex rel. v. West, 68 Mo. 229; Lennox v. Harrison, 88 Mo. 496; Twin Lick Oil Co. v. Marburg, 91 U. S. 591; Kitchen v. Railroad, 69 Mo. 264; Reel v. Ewing, 71 Mo. 29; Kline v. Vogel, 90 Mo. 248; Stamper v. Roberts, 90 Mo. 688; Schradski v. Albright, 93 Mo. 48; Ferguson v. Soden, 111 Mo. 215; Hatcher v. Hatcher, 139 Mo. 614.

GANTT, P. J.—A bill in equity was filed in this cause to have two deeds executed by plaintiff to Marcus A. Wolff in his lifetime, on September 18 and 19, 1884, declared a mortgage, and for an accounting.

Prior to July, 1884, John H. Bobb and Abraham Siegel were copartners. John H. Bobb was the owner of real estate and as such was accepted by the probate court of St. Louis as surety on many bonds of William C. Jamison. It appears that on February 2, 1881, Siegel & Bobb borrowed from William C. Jamison and George W. Cline $4,000, and to secure its payment Bobb gave a deed of trust on the property in suit, known as 1403 Olive street in the city of St. Louis.

On July 3, 1884, John H. Bobb borrowed of Marcus A. Wolff and Company $3,600 and gave the following note indorsed by William C. Jamison therefor:

"St. Louis, July 3rd, 1894.

"Two months after date I promise to pay to the order of William C. Jamison, Esq., thirty-six hundred dollars for value received, negotiable and payable without defalcation or discount with interest from ———— at the rate of ———— per cent per annum, payable at the Boatmen's Savings Bank.

(Signed)     "JOHN H. BOBB.
(Indorsed) "WILLIAM C. JAMISON.
(Indorsed) "M. A. WOLFF & CO."

Wolff discounted the note at the rate of eight per cent and that rate was accepted by Bobb. William C. Jamison became a defaulter for many thousand dollars in July, 1884, to the estates of many decedents and minor children and Bobb as surety became greatly involved also.

John H. Bobb thereupon conveyed all of his property to his old partner Siegel, De Groot and the Planet Property and Financial Company. Bobb himself left the State, so that the ordinary process of law could not be served upon him.

When the above mentioned note of July 3, 1884, for $3,600, became due Bobb did not pay it. On the eighteenth day of September, 1884, Bobb conveyed the property, number 1403 Olive street, to Wolff by deed executed by himself alone. The consideration was stated as follows:

"The said John H. Bobb hereby covenanting that he will warrant and defend the title to the said premises unto. the said party of the second part and unto his heirs and assigns forever, against the lawful claims and demands of all persons whomsoever, excepting as to the following encumbrances which said party of the second part, for value received, assumed and hereby agrees to pay and discharge, viz.: A deed of trust of record to secure a note of $5,000, upon which $1,000 has been paid leaving a balance of $4,000 on the principal of said note. All interest has been paid on said note up to April, 1884, when payment of said balance due on said note was extended for two years from April, 1884, and four interest notes were given payable for $140, each payable respectively in six, twelve, eighteen and twenty-four months after date. All of said notes were made by John H. Bobb and Abraham Siegel. The general taxes for the years 1884 and 1885, and a special tax for paving street front of said property now due."

This deed seems to have been made with great haste, for on the next day another deed to the same real estate was made by Bobb and wife to Wolff in which the consideration is recited to be $7,600 and Wolff assumes the payment of the $4,000 incumbrance to Jamison & Cline, and the interest notes thereon and the taxes for 1884 and 1885 and a special paving tax.

At this time Wolff surrendered to Bobb his note for $3,600. This canceled note was produced on the trial by Bobb.

Plaintiff claims that contemporaneous with this deed

there was a collateral agreement and to corroborate this claim he offered and read in evidence the following letter:

"M. A. Wolff & Co., Real Estate Agents,
No. 105 North Eighth Street,
St. Louis, Nov. 17th, 1886.
"Mr. John H. Bobb, City.

"Dear Sir: Do you desire to redeem (or purchase) the property on Olive street? Though the time is out, I have no objection to do as if you wish now on the terms originally agreed upon. Please let me hear from you at once, and oblige. Yours truly, M. A. WOLFF."

We can find no evidence that Bobb accepted the proposition made in this letter or that he ever afterward spoke or wrote to Wolff about the matter during Wolff's lifetime.

The reasonable value of the property in 1884, at the date of the deed, was probably $7,500 or $8,000. The building was originally a dwelling house and had been rented for $45 or $50 a month, but had been vacant in the summer of 1884 for a long time. In 1894 it was worth $21,000. Soon after the conveyance to Wolff he expended $3,000 in altering the house and increased the rental to $100 per month.

Plaintiff offered as evidence tending to show Wolff was holding the property in trust or as mortgagee certain conversations of Mrs. Lucy Taylor, a sister of Bobb, with Mr. Wolff. Mrs. Taylor testified that about the time the deed to Wolff was made she met Wolff in Siegel's store, west side of Broadway near Olive, and he asked her where her brother John was, and she said he had just stepped out and Wolff then said, "You know I am going to do all I can for John, you know I am a friend of yours."

In February, 1886, Mrs. Taylor at the instance of her brother requested Wolff to furnish an itemized account of the receipts and disbursements made by him on account of house 1403 Olive Street. At that time Marcus A. Wolff

was doing business under the style of M. A. Wolff & Company. He had no partner. Edward Wolff, his son, was his bookkeeper, and Paul Beck a clerk. They prepared an account for her in this form:

"M. A. Wolff & Co.

"In account with House 1403 Olive Street,
1884-5-6

"Items of credit beginning Oct. 13, 1884, down to and inclusive of Jany. 15, 1886, aggregated $766. The debits including the $3,600 and interest notes, taxes, repairs, water licenses, etc., beginning September 19th, 1884, and including Feby. 15, 1886, amounted to $7,583.25, leaving a balance of $6,817.25, which the house had cost Wolff to that date, Wolff not having as yet paid off the prior mortgage of $4,000."

Some time in February M. A. Wolff handed this statement with vouchers to Mrs. Taylor to give to John H. Bobb, who was still sojourning in East St. Louis, Illinois, saying to her, "You know that I hold it in trust for your brother John; I told you when this took place I would do all I could for him."

Nothing having, presumably, been heard from Bobb by Marcus A. Wolff, on November 17, 1886, Wolff wrote him the letter of that date already noted and copied.

Abraham Siegel testified that in 1891 M. A. Wolff had a conversation with him in which he said he would be glad if Mr. Bobb would be able to get out of the hole if the matter was fixed up about the Olive street property.

On July 14, 1891, Marcus A. Wolff died intestate, leaving Eliza J. Wolff, his widow, George P. Wolff, Edward B. Wolff, Alice S. Wolff, and Eliza C. Wolff, his children, . as his only surviving heirs. His widow qualified as administratrix July 21, 1891, and his estate was finally settled April 12, 1894.

On the 15th day of September, 1893, a suit in partition was instituted by George P. Wolff, one of his sons, against Edward B. Wolff and the other heirs, for the partition of the real estate.  On May 14, 1894, a final judgment of partition was rendered and the property, 1403 Olive street, St. Louis, was allotted to Edward B. Wolff.

No claim was presented by John H. Bobb against the estate of Marcus B. Wolff pending the administration. John H. Bobb was not a party to the partition suit.  No effort to redeem the property in suit was ever made by John H. Bobb, until a very few days before the commencement of this suit on September 17, 1894.  At that time John H. Bobb called on Edward B. Wolff and exhibited to him what purported to be two telegrams, as follows:

St. Louis, July 15th, 1896.
"Marcus A. Wolff, St. Clair Hotel, New York.

"I think I have a chance to sell 1403 Olive street. What will you give me for my equity of redemption in the same.

"JOHN H. BOBB."

"New York, July 15th.
"John H. Bobb, 318 Chestnut street,

"2nd Story, St. Louis.

"Don't want to buy; have calculated on your redeeming in September.

"M. A. WOLFF."

Bobb then requested Edward Wolff to give him an account of the receipts and disbursements on account of this property since February, 1886, which Edward Wolff declined to do, saying, "A man can not stand by for one hundred years and then come around and want his property."

The circuit court rendered a decree for defendants, and plaintiff appeals.

No principle is more firmly rooted and grounded in our laws than the doctrine that a court of equity may decree a conveyance, absolute in form, to be a mortgage or security for debt only, and foreclose it as such, or entertain a bill by the grantor therein to redeem the property by satisfying the debt on equitable principles.    [Book. v. Beasly, 138 Mo. 455; O'Neill v. Capelle, 62 Mo. 202; Hargadine v. Henderson, 97 Mo. 375.]

The *prima facie* presumption, of course obtains in all such cases that the deed is just what it purports to be on its face, an absolute conveyance of land, and the burden is cast upon the grantor to overcome this presumption and establish it as a mortgage by evidence, clear, unequivocal and convincing, otherwise the natural presumption must prevail.

While the courts have applied many tests to disclose the true nature of the transaction, whether an absolute deed or a mortgage, the one sure test and essential requisite has ever been "the continued existence of a debt" from the grantor to the grantee in the deed.   If there is no debt, the instrument can not be a mortgage whatever else it may be, but if the investigation develops an existing indebtedness by the grantor to the grantee, evidenced by bond or note or like agreement, not discharged by the conveyance, the courts have with great unanimity construed the deed to be only a mortgage.

Subordinate to this prime test it has been held as sig nificant, the existence of a collateral agreement by the grantor to pay money; his liability to pay interest; the surrender and cancellation of the evidences of debt, or suffering them to remain outstanding; the substitution of other instruments of indebtedness in place of the old; the fact that the grantor is left in possession and an application or negotiation for a loan pending the transaction.

The controversy between learned counsel in this case arises not so much in the different views they advance as

to the principles governing the transaction at bar, but the application thereof to the established facts.

Measuring the conduct of the plaintiff by these accepted tests, we find that on the eighteenth and nineteenth days of September, 1884, he made an absolute deed to the property in question to Marcus A. Wolff, the ancestor of the defendants, for the recited consideration of $7,600, said Wolff assuming and binding himself to pay a mortgage of $4,000 then existing against the lot. It appears that prior to this time Wolff had loaned plaintiff $3,600, which had become due just prior to the date of this deed. According to ordinary experience there can be little doubt that the payment of the debt due from plaintiff Bobb to Wolff, satisfactorily accounts for $3,600 of the expressed consideration of the deed and that the assumption of the previous mortgage for $4,000 supplies the remainder thereof. It appears moreover that this amount $7,600 was about the fair and reasonable market value of the property at that time. Wolff then and there surrendered the note of $3,600 to Bobb and took immediate possession of the propety and soon thereafter expended $3,000 of his own money in changing it so that he could more readily lease it.

Did the debt of Bobb to Wolff continue? To hold that it did, we must run counter to all ordinary experience in business transactions.

Wolff surrendered the note, the only evidence of debt he held against Bobb; Bobb from that day on never paid Wolff a cent of interest and Wolff does not demand any. Wolff takes the open possession of the property and retains it yet. The *prima facie* case made by the deed is not only not rebutted by these facts, but strongly corroborated by every circumstance accompanyng and succeeding the transaction. This property has increased marvelously in value, but to test the intention of these parties, let us assume it had depreciated to half its value and Wolff had sought to estab-

lish that the deed was only a mortgage and sought a judgment over against Bobb.

What difficulties would he have encountered? He no longer has the note. It is plain that the amount of that note entered into the consideration of an absolute deed. Not only that, but there is his written assumption to a third party of Bobb's debt of $4,000. Would it not tax the credulity of any chancellor to find in the face of these facts that this was only a mortgage? But the case is even stronger than this.

Had Wolff commenced such a proceeding in his lifetime, he might have testified and possibly convinced a court that he was right, but suppose his administratrix had brought such an action, and had been confronted with the surrendered and canceled note, contemporaneous with the delivery of the absolute deed, can it be questioned what the decree must have been? Our conclusion is that plaintiff on these facts alone has unquestionably failed to establish his claim of a mortgage.

We must not ignore plaintiff's contention founded upon the letter of Wolff of November 17, 1886. In this letter Wolff offers to permit Bobb to redeem or purchase "on the terms originally agreed upon," if he does so "at once." In the face of this written admission it is not to be questioned that there was "originally," at some time, some agreement by which Bobb was to have the right to redeem or purchase back this property.

In what attitude does this place the parties? The defendants have an absolute deed, have paid the full consideration expressed therein, are and have been in possession since the execution of the deed.

The settled law requires plaintiff to establish what "the terms originally agreed upon" were. Assuming that it secured a right to redeem or purchase, within what time was he to do so? Upon what terms was he allowed to do this,

upon simply paying as he now claims, the $3,000 with interest and require Wolff to account for the rents? Did he consent that Wolff should change the building and charge plaintiff with the amount so paid out with interest, which plaintiff now denies? Was Bobb to refund the $4,000 of the prior mortgage and interest, which Wolff assumed and paid? What were the "original terms" agreed upon as to all these matters? No answer is to be found in the record, save and except that Wolff insists in this same letter that the option or right to redeem or purchase has expired.

It might be inferred from the letter of November 17, 1886, that Wolff would have been willing to settle at that time with Bobb on the basis of the statement given to Mrs. Taylor, because he had not then paid off the $4,000 mortgage, but Bobb did not close with him on the strength of that offer.

The testimony of Siegel and of Mrs. Taylor, outside of the statement and Wolff's letter, add nothing whatever to plaintiff's case. Loose, indefinite remarks, such as these, can not form the basis of an intelligent decree by a court.

When Wolff made the offer of November 17, 1886, he referred to "terms originally agreed upon." At that time the two parties who had made that agreement were alive. Had Bobb accepted the offer and tendered a performance of those terms on his part, and Wolff had failed or refused, the courts were open to Bobb and those terms could have been ascertained, but Bobb waited until the lips of Wolff were sealed by death, and his own by the law.

What those terms were we do not know, but it is clearly not Wolff's fault, but must, under all the facts, be charged to Bobb's own laches. It by no means follows that in the absence of this evidence as to the original agreement, we are bound to presume such an undertaking as would convert this deed into a mortgage.

That burden still rests upon the plaintiff to prove the terms before he can enforce it.

There is much force in the argument of defendant's counsel, that the letter of Wolff comes nearer establishing that the contract was an agreement to permit Bobb to repurchase, an agreement essentially distinct from a mortgage. [4 Kent's Com. (12 Ed.), star p. 144; 2 Wash. Real Prop. (5 Ed.), p. 59; 15 Am. and Eng. Ency. of Law, 780.]

The distinction was early made by this court in Slowey v. McMurray, 27 Mo. 113, in which Judge Scott adopts Chancellor Kent's text with approval to the effect "that if the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage, but if the debt is extinguished by the agreement of the parties or the money advanced was not by way of loan and the grantor has the privilege of refunding if he pleases by a given time, and thereby entitling himself to a reconveyance it is a conditional sale."

As already said, when Wolff surrendered his note and unconditionally assumed the $4,000 mortgage to another person, the debt was extinguished. There was left no basis for a mortgage, and it is far more consonant with reason and common business experience to say that if this evidence tends to prove any agreement with certainty, it was no more than an agreement to permit Bobb within a limited time which had expired prior to November 17, 1886, to repurchase the lot, and having failed and not having brought himself within his agreement, he has lost that right. [Turner v. Kerr, 44 Mo. 433; Forrester v. Moore, 77 Mo. 661.]

As to the attempt to show this was an express trust it need only be said there is no evidence of such a trust, or its terms and all the argument tending to show that laches can not be imputed to a *cestui que trust* in an express trust must fall with the proposition upon which it is based. No clearer

case for the application of the principle of laches can be found than this case presents.

Bobb, the plaintiff, with full opportunity if not actual knowledge of the course Wolff was pursuing with reference to the property, knowing the rapidity with which it was increasing in value; offered a chance to redeem or purchase it in 1886, supinely sits by and sleeps on his alleged right until the day before the ten years' limitation had expired, before commencing his suit. He waits until Wolff is dead and his children are deprived of all the evidence on his side and stands by and sees Wolff's estate finally settled without preferring his claim, and sees the real estate, including the land in suit, partitioned, and never once suggests that he has an equity of redemption in this land.

Under such circumstances, he has no standing in a court of conscience. His inexcusable laches alone should defeat him, if his utter failure to establish that the absolute deed he executed to the ancestor of these defendants was intended only as mortgage did not justify the dismissal of his bill.

The decree of the circuit court was right, and its judgment is affirmed.

SHERWOOD and BURGESS, JJ., concur.