# LAURA CONSTANT, Appellant, v. JULIAN SIMON.

### Division One, March 7, 1924.

1. **TRUST IN REAL ESTATE: Conveyance: Oral Agreement to Pay Debts: Accounting: Equitable Mortgage.** A conveyance, without consideration, by the owner of real estate upon an oral agreement that the grantee would collect the income therefrom, sell the same, and, after paying all incumbrances and charges against it, pay the balance over to the grantor, creates a trust in favor of the grantor, and calls for an accounting, and, if the property has not been sold, for a re-investment of the title in the grantor, upon a reimbursement of the grantee for what he has expended in pursuance to the oral agreement. But if the conveyance is supported by a consideration—if made for the purpose of pledging the property as security for the re-payment of money loaned the grantor by the grantee, to be used in preventing a pending foreclosure sale under an existing deed of trust—the quit-claim deed, though absolute in form, is an equitable mortgage, and the grantor's rights and remedies are those of a mortgagor, and he is entitled to a reconveyance only when he pays the mortgage debt.

2. ———: Conveyance as Mortgage: Redemption: Pleading. A bill which has for its purposes the settlement of a trust which would arise by operation of law upon the facts alleged, and containing none of the essentials of a bill to redeem mortgaged premises, cannot be treated as a bill to redeem. If it alleges that plaintiff's quitclaim deed to defendant was executed without any consideration whatever, and expresses no willingness to pay the debt for which the deed was in fact a pledge, or to reimburse defendant for his outlay, but simply seeks to have the premises re-conveyed to plaintiff subject to whatever debt may be found to be due defendant upon an accounting, it contains none of the essential elements of a bill to redeem.

3. ———: ———: Redemption: Performance. Only by due performance of the obligation secured by a mortgage can there be a redemption.

4. ———: Accounting: By Mortgagee in Possession. It is the duty of a mortgagee in possession to render an account to a person entitled and desiring to redeem the mortgaged premises; ' but where such person manifests no intention to redeem, either by his bill or by anything occurring during the progress of the trial, a judicial ascertainment of the state of the account serves no useful purpose.

---

Headnote 1:    Trusts: 39 Cyc. 60; Mortgages, 27 Cyc. 1004. Headnotes 2 to 4:    Mortgages: 2, 27 Cyc. 1854; 3, 27 Cyc. 1847; 4, 27 Cyc. 1835, 1836.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

AFFIRMED.

*L. Frank Ottofy* for appellant.

(1)    A parol agreement having been entered into between the parties, a constructive trust arose in favor of plaintiff by implication of law.   Bryan v. McCaskill, 284 Mo. 583, 603; Phillips v. Jackson, 240 Mo. 310, 335; O'Day v. Annex Realty Co., 191 S. W. 47; Carson v. Lee, 281 Mo. 166, 178.   (2)    The transaction between the parties is not within the Statute of Frauds.   Phillips v. Hardenburg, 181 Mo. 463, 475; Richardson v. Champion, 143 Mo. 538,

545; Leahey v. Witte, 123 Mo. 207, 212. (3) The defendant took title to the property under a parol agreement to sell it, and after payment of expenses to pay over the proceeds, and his retention of it without sale amounts to a constructive fraud and he is to be held to be her trustee. McLure v. Bank of Commerce, 252 Mo. 510; Brightwell v. McAfee, 249 Mo. 562, 579; Phillips v. Jackson, 240 Mo. 310, 335; Witte v. Storm, 236 Mo. 470. (4) Laches is no bar to a suit in equity to declare a constructive trust where no injury results to the defendant. Sicher v. Rambousek, 193 Mo. 113, 129; Myers v. De Lisle, 259 Mo. 506, 512; Stanton v. Thompson, 234 Mo. 7, 15; Rutter v. Corothers, 223 Mo. 631, 640; Meriwether v. Overly, 228 Mo. 218, 242; Lipscomb v. Adams, 193 Mo. 530, 546.

*D. J. O'Keefe* for respondent.

(1) The petition in this case and the evidence offered by plaintiff in support thereof show that this case clearly falls within the prohibitory provisions of our Statute of Uses and Trusts. Sec. 2263, R. S. 1919; Ferguson v. Robinson, 258 Mo. 113, 138; Mugan v. Wheeler, 241 Mo. 376, 382; Price v. Kane, 112 Mo. 412, 419; Crowley v. Crafton, 193 Mo. 421, 431; Rogers v. Rainey, 137 Mo. 598, 607; Hillman v. Allen, 145 Mo. 638, 643; Hammond's Admx. v. Cadwallader, 29 Mo. 166, 169. (2) The saving provisions of the statute effecting resulting trusts cannot be applied to the facts pleaded in this case and the evidence offered by plaintiff in support thereof. Sec. 2264, R. S. 1919; Ferguson v. Robinson, 258 Mo. 113, 120, 130; Hammond's Admrx. v. Cadwallader, 29 Mo. 166, 169; Mugan v. Wheeler, 241 Mo. 371, 381. (3) Had plaintiff pleaded and proven fraud upon the part of defendant (neither of which appears to have been done) the Statute of Limitation and the Statute of Frauds, both of which are pleaded by defendant, would be a bar to this action. Secs. 1317, 2169, R. S. 1919; Ferguson v. Robinson, 258 Mo. 113, 130; Hudson v. Cahoon, 193 Mo. 547, 561; Koyl v. Lay, 194 Mo. App. 297; Bank v. Thayer, 184 Mo. 61, 94;

Reed v. Painter, 145 Mo. 341, 356. (4) Had the petition charged facts sufficient to constitute a cause of action in equity upon an implied or constructive trust, there was no evidence which, under the law, would warrant a court of equity to find for the plaintiff.

RAGLAND, J.—This is an action to have declared a trust with respect to real estate and for an accounting. The petition was filed September 18, 1920. After alleging in substance that on the 8th day of June, 1910, plaintiff was the owner of the building (a flat) and premises known as No. 5854 Maple Avenue, in the city of St. Louis, subject to a first deed of trust securing a principal note of $5000 and semi-annual interest notes of $137.50 each, and a second deed of trust securing a series of notes of $30 each, maturing monthly, it proceeds as follows:

"Plaintiff further states that thereafter, to-wit, on the 8th day of June, 1910, one of the interest notes on said loan of $5000 having become past due and a foreclosure being threatened thereunder, as well as under said second deed of trust, by reason of said default, and the plaintiff being without means to secure the same, was, by her attorney, who was also the attorney of the said defendant Julian Simon, induced to convey the said real estate to the said defendant Julian Simon by quit-claim deed, upon his representation that by so doing she would be enabled to save her property from foreclosure, and it was agreed at the time of said conveyance that the said real estate should be held by the said defendant Julian Simon in trust for the plaintiff; that he should collect the income and profits therefrom, sell the same, and, after paying all incumbrances and charges thereagainst, he should pay over the balance to this plaintiff; that, although the said quit claim deed purports to have been made for a consideration of $200 and other consideration, in truth and in fact no consideration whatever passed from the said defendant Julian Simon to this plaintiff, . . .

"Plaintiff further states that she has from time to time and up until the —— day of July, 1920, demanded of

the defendant Julian Simon, through his said attorney, a full accounting of the rents and profits of the said property, but that the said defendant has on said date finally failed and refused to account therefor and has converted the same to his own use and is now using the said property for his sole use and benefit.

"Wherefore, by reason of the premises, plaintiff prays that an accounting may be had between her and the said defendant Julian Simon of the rents, profits and income derived by him from the said real estate; that the title to the said property may be divested out of the said defendant Julian Simon and vested in the plaintiff herein, subject to the balance, if any, found to be due on the said deed of trust, and that a receiver *pendente lite* may be appointed to collect the rents and income issuing therefrom, and for such other and further relief as to the court may seem meet and proper."

The answer consisted of a general denial coupled with pleas of the Statute of Frauds and the Statute of Limitations.

The controlling facts lie within small compass. Plaintiff bought the property in controversy in 1907 for $8100. It was encumbered with a deed of trust securing a principal note of $5000 and semi-annual interest notes of $137.50 each. This indebtedness plaintiff assumed and agreed to pay as a part of the purchase price. The principal note matured September 6, 1909, and on that date she secured a renewal of it for one year. On the 16th day of September, 1909, she gave a second deed of trust on the premises to secure the payment of $800, in twenty-six monthly installments, twenty-five of $30 each and one (the final one) of $50, as evidenced by twenty-six notes of even dates. When the semi-annual interest on the note secured by the first deed of trust fell due on March 6, 1910, plaintiff was unable to pay it. The default continuing a foreclosure proceeding was commenced and a sale thereunder advertised for June 8, 1910. In the meantime plaintiff made every endeavor to secure the necessary funds to meet the interest payment, or to effect a

sale of the property. The holder of the first-mortgage note had previous to that time offered $6900 for the property. She had then refused the offer; now she expressed a willingness to accept it, but he said the property was worth no more than $6700 and that he would not give even that for it. Having failed in all her other efforts to sell the premises or to procure a sufficient sum of money to pay the overdue interest and stop the foreclosure sale, plaintiff sought the assistance of Mr. J. D. O'Keefe, who had been her attorney in various matters occurring before that time. She appeared at Mr. O'Keefe's office at about eleven o'clock on the morning of the day the property was advertised to be sold. She told him that she had a buyer in prospect and if she were allowed only a couple of days' time she could consummate a sale of the property and thereby save something out of it. O'Keefe told her that he could not let her have the money, but that a Mr. Simon, a client of his, might be induced to come to her rescue. Thereupon he called defendant over the phone. As a result of the conversation that followed between them plaintiff was sent by O'Keefe to defendant's place of business, where she received from defendant $175. This she used in paying the indebtedness with respect to which she was in default and thereby stopped the impending sale under foreclosure. Pursuant to the arrangement made by O'Keefe with defendant over the telephone, plaintiff on the same day, or within a day or two afterward, executed a quit-claim deed whereby for an expressed consideration of $200 she conveyed to the defendant the premises in controversy and delivered him the possession.

Plaintiff testified that at the time she delivered her deed to defendant the understanding between them was that he was to sell the property, discharge the encumbrances, reimburse himself for his advancements and such expenses as he should necessarily incur and pay the balance, if any, to her. Both defendant and O'Keefe on the other hand testified, in effect, that the $175 was loaned plaintiff on the strength of her representations that she could effect a sale of the premises within a day or two to

a prospective buyer she then had in hand, and that she made the deed to defendant to secure to him the re-payment of the loan within the period she had designated or within a reasonable time thereafter.

Plaintiff was never able to effect a sale of the property. Soon after defendant took the title he found it necessary, in order to protect his security, to make repairs on the building and to discharge certain obligations of plaintiff that constituted liens against the premises— delinquent taxes, a personal judgment and past due notes secured by the second deed of trust. When the $5000 note secured by the first deed of trust became due September 6, 1910, the holder required the payment of $500 on account of the principal debt, in addition to the interest then accrued. These defendant. paid. Subsequently he paid in full the remaining indebtedness secured by the two deeds of trust respectively.

In 1912, plaintiff instituted in the Circuit Court of the City of St. Louis a suit against defendant similar to the present one wherein she sought an accounting and re-investment of the title to the real estate. The proceeding was dismissed without a trial, because of plaintiff's inability to comply with an order requiring her to give security for costs. Soon after the dismissal of that suit defendant, at the request of plaintiff, gave her an itemized statement of his expenditures in connection with the property and of all his receipts of rents therefrom. This statement, which was offered in evidence by plaintiff, showed that defendant's expenditures, up to that time, together with the mortgage indebtedness remaining unpaid, aggregated approximately $7000. There is no satisfactory evidence in the record as to the value of the property at the time of the trial, but obviously the margin between such value and the total of the original advancements made by defendant was small. The building consisted of two apartments, each rented, when occupied, for $35 per month. The lower one it appears was vacant a portion of the time.

303 Mo. Sup.—14.

After hearing the evidence, the material portions of which are briefly summarized in the foregoing, the trial court gave judgment dismissing plaintiff's bill. From such judgment she prosecutes this appeal.

If the allegations of the petition, that plaintiff conveyed her real estate to the defendant without consideration, but upon the oral agreement "that he should collect the income and profits therefrom, sell the same, and, after paying all encumbrances and charges thereagainst, . . . should pay over the balance to . . . plaintiff," had been supported by the proof, then clearly such a trust would have been established as would have entitled her to the relief she asks, namely, an accounting and a reinvestment of the title in herself. But the conveyance was not made without consideration. On the contrary it was made for the purpose of pledging plaintiff's real estate as security for the re-payment of the money loaned her by defendant. A consideration of all the facts and circumstances leaves no doubt but that such was the intention of the parties. The quit-claim deed, therefore, though absolute in form, was an equitable mortgage, and plaintiff's rights and remedies in the premises are those of a mortgagor. [Carr v. Carr, 52 N. Y. 258; Yingling v. Redwine, 12 Okla. 67.] She is entitled to a re-conveyance of the land when, and only when, she pays the mortgage debt. In other words, she has the right of redemption and no other. That is true even if it be conceded that a valid power of sale was conferred upon the defendant as mortgagee by the oral agreement. Such power of sale would be but a method or incident of foreclosure, a remedy that the mortgagee may invoke or not as he chooses. Redemption being the only remedy to which plaintiff is entitled, can this action be treated as a suit to redeem? It is said that almost any bill in equity which shows the essentials of a right or equity to redeem mortgaged premises may be so treated, or may be turned into a bill to redeem, although originally framed with a different aspect. [27 Cyc. 1853.] An examination of the petition in the instant case, however, discloses that it has for its purpose the settlement of a trust which would

Constant v. Simon.

arise by operation of law upon certain facts which it hypothesizes, but that it contains none of the essentials of a bill to redeem. In the first place it neither expressly nor inferentially states that the quit-claim deed was intended as a security for debt, in other words that it was intended as a mortgage. On the contrary it alleges that the deed was executed without any consideration whatever. Again, it neither contains an expression of willingness on the part of the plaintiff to pay the debt for which the deed of conveyance was in fact given as a pledge, nor an averment that the rents and profits received by defendant are sufficient to reimburse him for his outlay or any substantial part thereof. On the other hand it seeks to have the premises re-conveyed to plaintiff subject to whatever may be found due upon an accounting on the original mortgage indebtedness. Aside from the pleadings, nothing occurred during the progress of the trial which indicated in the remotest way an intention on the part of plaintiff to pay whatever should be found due defendant on an accounting. Nor was it anywhere claimed or asserted that the rents that had been received by defendant were sufficient to discharge the original debt to him, and reimburse him for the subsequent advancements he was required to make, with interest. The fact is that plaintiff is not seeking to redeem by paying the indebtedness chargeable against the mortgaged property; on the contrary, she is seeking in express terms to have it re-conveyed to her *subject* to such debt. The evidence as a whole makes it reasonably plain that she is unable to procure the funds with which to pay the indebtedness for which her property is pledged. And that is the crux of the matter. There can be no redemption except through the due performance of the obligation to secure which the mortgage was given.

In addition to a re-conveyance plaintiff asks an accounting at the hands of the defendant. There can be no question but that it is the duty of a mortgagee in possession to render an account to a person entitled to redeem and desiring to do so. As, however, plaintiff has mani-

fested no intention of redeeming, a judicial ascertainment of the state of the account between her and defendant could serve no useful purpose.

Under the pleadings and the proof the judgment of the trial court was the only one that could have been rendered. It is therefore affirmed. All concur.