JAMES O. STAFFORD and EMILY D. STAFFORD, Plaintiffs, and W. S. RICHARDSON, Intervenor, Appellants, v. LEO T. McDONNELL, Defendant, Respondent, No. 41276—224 S. W. (2d) 951.

Division Two, November 14, 1949.

Motion to Modify Opinion and Mandate Sustained in Part and Opinion Modified, December 12, 1949.

*Leman E. Atherton* for appellants James O. Stafford and Emily D. Stafford and *Frank H. Backstrom* for appellant W. S. Richardson.

*Waldo P. Goff* and *P. M. Marr* for respondent.

BOHLING, C.—James O. and Emily D. Stafford, husband and wife, instituted this declaratory judgment suit on April 23, 1948, to have their two certain warranty deeds, absolute on their face, to Leo T. McDonnell declared mortgages and security for a debt if payment be made on or before March 1, 1949, and for general relief. W. S. Richardson, who had a contract for a deed from the Staffords to part of one of the tracts of land, intervened and asked like relief. The chancellor found defendant to be the owner of said lands, subject to the right of plaintiff James O. Stafford to occupy a portion thereof until March 1, 1949, and entered a decree and judgment accordingly. Plaintiffs and intervenor appeal.

The land is located in Sullivan county, Missouri. One tract contains approximately 703 acres and is known as the Shatto farm. The other tract, known as the Spangler farm, contains approximately 670 acres. The Sulmo Land Company conveyed the Spangler land to O. R. and Leona Newcomer on November 9, 1946; and the Metropolitan Life Insurance Company conveyed the Shatto land to O. R. Newcomer on November 13, 1946. Cancelled revenue stamps in the amount of

$18.70 and $20.35 were on the respective deeds. The cancelled revenue stamps indicate the lands had a value in excess of the encumbrances, mentioned infra, against them. Stafford testified it took some cash to buy the farms; that, accounting for some of the cash, he paid $1,000 on one farm and his daughter paid $850 on another; that $1,500 was ''off'' for commission due him; and that Newcomer and he had $1,500 profit on the sale of a house, which Newcomer said he applied on the purchase.

The Newcomers executed a deed of trust against the Spangler land to secure a $12,000 note payable to the Trenton Trust Company, and a deed of trust against the Shatto land to secure a $13,800 note payable to the Metropolitan Life Insurance Company.

On March 25, 1947, Newcomer and wife conveyed said lands by separate deeds to James O. and Emily D. Stafford, subject to the outstanding indebtedness. Thereafter the Newcomers instituted suit against the Staffords, and W. S. Richardson intervened therein. Richardson was in the real estate business. That suit was settled by a stipulation dated February 6, 1948, wherein, among other things, Richardson agreed to execute a $5,000, 4%, sixty day, note payable to Newcomer; and a judgment was to be entered adjudging James O. and Emily D. Stafford owners of said lands, free and clear of any claims by the Newcomers, but subject to the encumbrances of record which the Staffords agreed to pay.

Stafford and Richardson entered into a separate agreement on said February 6, 1948, whereby Stafford agreed to deed to Richardson all of the Spangler farm, except approximately 70 acres, and Richardson agreed to deliver five notes executed by Stafford in the total amount of $21,200—the deed and notes to be delivered in escrow to L. E. Atherton. Stafford's deed to Richardson was subject to the $12,000 note and deed of trust and Richardson, who assumed and agreed to pay said note, was the one principally interested in discharging the debt. The deed and all the notes, except one $5,000 note which Richardson never delivered, were deposited in escrow. There was testimony on behalf of plaintiffs that Newcomer and McDonnell knew of this transaction between Stafford and Richardson; but each of said persons, as well as others connected with them, strenuously denied any knowledge of this situation until Richardson intervened in the instant suit.

Richardson defaulted in a payment on the $12,000 note in March, 1948, and the Spangler farm was advertised under the deed of trust for sale at Milan on April 17, 1948. Payments were also due on the Metropolitan Life Insurance Company's note sometime in April, 1948.

On April 12, 1948, Stafford went to St. Joseph to seek assistance. Newcomer was prosecuting attorney and Stafford called at his office. Newcomer called McDonnell ▮▮▮ to his office. McDonnell testified that he then first learned of the foreclosure proceeding; that he had

furnished Newcomer with the money to purchase the farms; that he informed them he had $10,000 tied up; that he would take care of the obligations then due for payment on the Spangler and Shatto farms, including taxes, in consideration of a deed to the Spangler farm, subject to the indebtedness thereon. Stafford testified a contract was submitted to him but it was "silly" and he would not sign it. McDonnell testified that they decided to wait until morning to write the contract; that the next morning Stafford wanted 70 acres off of the Spangler farm; that he thereupon told Stafford he did not want anything more to do with him and walked away.

Stafford testified that Richardson had agreed to have the money available by Friday, April 16, to stop the foreclosure; that about 4 p. m. April 16, being unable to get in touch with Richardson, he left Milan for St. Joseph; that he saw McDonnell and they located Newcomer; that the three talked over the situation; that they thought the Trenton Trust Company would have to be paid in full, together with the back taxes et cetera. According to Stafford, who was the only witness offered by plaintiffs to establish the contract sued on, McDonnell agreed to furnish the necessary money to take care of the deeds of trust and to pay Mrs. Stafford $1,000 and, in consideration, the Spangler and Shatto farms were to be deeded to him as security and he was to reconvey the farms "if he got what money he was out and the $5,000 back, Richardson's note," which Newcomer had placed with McDonnell as collateral for what he owed McDonnell. He testified: "I had till March 1st."

McDonnell testified he did not go to Stafford or Newcomer; that they came to him; that Stafford telephoned him about 10 p. m. April 16 and they got in touch with Newcomer; that after some discussion, witness told Stafford he would give him $1,000 for a deed to both farms and Stafford could live where he was (on the Shatto farm) until March 1, 1949; and also said: "Anything I have got in these farms, if you fellows will get out and sell them, you can have it all over and above what I have got in it." McDonnell was to see his attorney, Mr. Goff. The following morning, April 17, McDonnell, Stafford, Newcomer, and Goff went to where Mrs. Stafford was, and after talking with his wife, Stafford came out and told them she insisted on having $1,000 to sign the deeds. They went into the house where McDonnell paid Mrs. Stafford $1,000, and the deeds were executed and acknowledged.

McDonnell testified further: Nothing was said about a loan. He told them he "had $10,000 in it" before he gave them the $1,000 and paid the other money. "Anything they got over what I had tied up in them they were perfectly welcome to it." Newcomer still owed him the money. "I told him [Stafford] I wouldn't try to sell the farms, that anything they could sell the farms for between then and March 1, 1949, over and above what I had in them, they could have." If

the farms were sold or he received his money otherwise, McDonnell was to convey to Stafford or whomever he named, and give him $500 for doing it.

Newcomer admitted an indebtedness to McDonnell of $10,000 or $10,300. Newcomer's testimony corroborates McDonnell's to the effect that when McDonnell received the $10,000 he had advanced to Newcomer and the outlays in connection with the deed of trust debts, McDonnell was willing to deed the land to anyone Stafford designated.

Mr. Goff testified to like effect as McDonnell, that is, when "McDonnell got his money back he would deed the farm to anybody, to Stafford or anybody he wanted."

On the morning of the sale, April 17, Richardson arrived in Trenton with a $1,000 check and was informed by the officials of the Trenton Trust Company that, subject to the approval of Stafford, they would accept the $1,000 payment and suspend the foreclosure. Richardson testified he attempted to locate Stafford but had been unable to find him; that he learned of the Stafford-McDonnell deeds about noon upon inquiry at the Recorder's office. We understand The Platt Valley Bank had a suit pending against Richardson on the $5,000 note at the time of trial.

Stafford, McDonnell, Newcomer, and Goff proceeded to Trenton. Stafford testified that McDonnell and Goff went to the bank and when they returned McDonnell said Richardson had been in "raising hell"; that Goff and he would go to Milan, and Stafford and Newcomer would stay in Trenton; that Newcomer insisted he stay in Trenton; that they went to the hotel and Newcomer locked the door to their room and laid a gun on the dresser. Defendant's evidence was that Newcomer had no gun and did not threaten Stafford; that Stafford told Newcomer if he went to Milan a suit would be filed against him there; and that they remained in Trenton to inform Pete Howard and Roy Eaton, who had waited in St. Joseph to secure $13,000 cash to pay the deed of trust debt, that the others had gone to Milan.

McDonnell advanced the moneys necessary to stop the foreclosure, the Bank agreeing to continue the deed of trust, and on Monday, April 19, he paid the money due on the debt secured by the Shatto farm. His payments totaled $3,378.45.

Stafford testified that two men had been to look at the farms who said McDonnell had sent them; that he then instituted this suit; that soon thereafter McDonnell wanted to know why he had been sued; that when told, McDonnell said he did not send the men and whenever he received the $13,500 he had in it Stafford could have it back. Stafford replied that he "pushed the ante up a little."

██ There is a presumption that an absolute unconditional conveyance of land is what it purports to be—a deed. Wright v. Brown (Mo.), 177 S. W. 2d 506, 509 [2]; Bobb v. Wolff, 148 Mo. 335, 49 S. W. 996, 998. However, a deed absolute on its face may be an equitable

mortgage, or security for a debt, to be foreclosed as such. Mayberry v. Clark, 317 Mo. 442, 297 S. W. 39; Stephens v. Stephens (Mo.), 232 S. W. 979. We have said the proof to establish a deed to be an equitable mortgage must be clear, satisfactory, and convincing (Snow v. Funck (Mo.), 41 S. W. 2d 2, 5[5]; Wright v. Brown (Mo.), 177 S. W. 2d 506, 509[2]), establishing the facts beyond a reasonable doubt (Worley v. Dryden, 57 Mo. 226; Groff v. Longsdon (Mo.), 239 S. W. 1087, 1088[1]; Robinson v. Field, 342 Mo. 778, 117 S. W. 2d 308, 315[9]). Doubts are resolved in favor of the letter of the conveyance. King v. Greves, 42 Mo. App. 168, 171.

■ We think the trial chancellor inadvertently overlooked the effect of defendant's evidence. Both Stafford and McDonnell are in accord that at the time of Stafford's deeds to McDonnell there was an understanding for the reconveyance of the farms by McDonnell upon Stafford meeting certain conditions by March 1, 1949. The fact upon which they differed is whether the cash payment to McDonnell was to be $5,000 or $10,000. Thus, the evidence established an intention on the part of Stafford and McDonnell for McDonnell to reconvey the farms upon certain conditions. Robinson v. Field, 342 Mo. 778, 117 S. W. 2d 308, 316[9-10]; Constant v. Simon, 303 Mo. 203, 259 S. W. 424, 426[2, 6]. The decree below is in harmony with this conclusion in that, while finding the issues for the defendant, nevertheless it decreed that Stafford had "the right to occupy and use" the Shatto farm "until March 1, 1949." This right had its foundation in the oral agreement between Stafford and McDonnell, as testified to by each. It is not found in any written instrument.

■ Plaintiffs say the $11.00 cancelled revenue stamps on the deeds to McDonnell establish a consideration of $5,000 plus $3,378.45, whereas McDonnell's testimony would have called for $15.85 in stamps. When the deeds were executed it was not known how much cash would have to be paid the Trenton Trust Company and McDonnell had available at Milan $13,000. The deeds to McDonnell were made subject to the deeds of trust against the respective farms. It is evident McDonnell was acquiring the Staffords' equity. The $11.00 cancelled revenue stamps affixed to the deeds (by Stafford) indicate a consideration ■ of $10,000 for this equity at 55¢ per $500.00 of the consideration. U. S. C. A. Tit. 26, § 3482. McDonnell's testimony to the effect that the sum agreed upon was $10,000, and not $5,000, was corroborated by Goff and by Newcomer. The chancellor's findings determine that the contract relied upon by plaintiffs was not established by clear, satisfactory, and convincing evidence. Defendant's evidence fixing the amount at $10,000 is not as satisfactory as desired; for instance, they had no written evidence of Newcomer's indebtedness, which rested on parol testimony. However that Newcomer owed McDonnell approximately $5,000 is not seriously questioned. Whatever the debt, McDonnell was in

sisting upon $10,000 for a reconveyance. Considering that plaintiffs had the burden and deferring to the chancellor's evident view on the credibility of the witnesses, we conclude $10,000 was the amount, in addition to his outlays, upon which McDonnell was to reconvey, although the issue may involve other facts considered of less weight.

We are not impressed with plaintiffs' argument that the provision of the Statute of Frauds (§ 3354, R. S. 1939, Mo. R. S. A.) requiring a writing to hold one to answer for the debt of another prevents McDonnell relying upon Stafford's agreement to pay $10,000. McDonnell is not attempting to maintain an action on that obligation. Plaintiffs invoke the aid of a court of conscience to declare these absolute deeds to be equitable mortgages. The Statute of Frauds would function as an instrument of fraud if plaintiffs are to prevail and receive the benefit of their claimed equitable rights and at the same time stand relieved of the performance of their agreed conditions precedent to the enjoyment of said rights on the ground such conditions are not evidenced according to the Statute of Frauds. This is not the purpose of the statute. Bick v. Mueller, 346 Mo. 746, 142 S. W. 2d 1021, 1024; Forrister v. Sullivan, 231 Mo. 345, 370, 132 S. W. 722, 729; Janssen v. Christian (Mo. App.), 57 S. W. 2d 692, 694[2]; 37 C. J. S. 713, § 217, 753, § 247; 49 Am. Jur. 843, § 542.

Scott, J., in Slowey v. McMurray, 27 Mo. 113, 116, applied the following in holding an agreement a conditional sale, viz.: " ** the distinction between a mortgage and a bill of sale is, that, if the relation of debtor and creditor remains and a debt still subsists, it is a mortgage; but if the debt is extinguished by the agreement of the parties, or the money advanced was not by way of loan, and the grantor has the privilege of refunding if he pleases by a given time and thereby entitling himself to a reconveyance, it is a conditional sale. (4 Kent Comm. 145.)" Quoted in Bobb v. Wolff, 148 Mo. 335, 348, 49 S. W. 996, 999. We are mindful that in cases of doubt whether a mortgage or conditional sale was intended that a construction holding the agreement a mortgage is favored. Williamson v. Frazee, 294 Mo. 320, 242 S. W. 958; 59 C. J. S. 34, § 10. However, the parol evidence establishes an intention to create a conditional sale. McDonnell did not lend Stafford any money and Stafford owed McDonnell nothing. Stafford was not obligated to repay any part of the $3,378.45 advanced by McDonnell. He was not obligated to discharge Newcomer's indebtedness to McDonnell. He was under no obligation to pay any interest. He had the privilege of paying a certain sum and receiving a reconveyance of the lands. McDonnell could not legally force Stafford to pay the amounts mentioned if Stafford declined to do so.

The judgment is reversed and the cause, under plaintiffs' prayer for general relief, is remanded with directions to modify the judgment as follows: The deeds are to be decreed equitable conditional

sales. If within a reasonable time, fixed by the chancellor, plaintiffs pay $13,378.45 to defendant, plus any additional payments established by defendant to have been made on the debts secured by the deeds of trust or taxes against the lands, less the sum of $500 and any credits Newcomer is entitled to on his indebtedness to defendant, defendant is to reconvey the lands to the Staffords, or if he default therein, title is to be decreed in the Staffords. If the foregoing occurs, intervenor Richardson is to ▌ have a reasonable time, to be fixed by the chancellor, to perform his contract of February 6, 1948, and subject the title of the Staffords to his rights thereunder. The costs are taxed against the defendant. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.

### ON MOTION TO MODIFY.

PER CURIAM:—Plaintiffs and intervenor, appellants, have filed a motion to modify the opinion so as to extend the scope of the inquiry by the chancellor upon receipt of our mandate to embrace rights other than those specifically mentioned in the last paragraph of the opinion claimed by appellants to have arisen subsequently to the appeal herein and by reason of the change effected in the judgment and decree of the trial court. The motion may have some merit. Accordingly, the last paragraph of the opinion herein is modified by adding the following sentence thereto, viz.: Other rights and equities, if any, arising subsequent to the appeal herein between the parties under the relationship existing as the result of the conditional sales herein decreed also are open to inquiry and adjudication by the trial chancellor.